[No. 10416–4–II.   Division Two.   March 1, 1988.]

WILLIAM T. WOJCIK, *Appellant*, v. CHRYSLER CORPORATION,
ET AL, *Defendants*, KITSAP COUNTY,
*Respondent*.

*John L. Messina, Stephen L. Bulzomi,* and *Messina & Duffy,* for appellant.

*D. Joseph Hurson* and *Lane, Powell, Moss & Miller,* for respondent.

ALEXANDER, A.C.J.—William F. Wojcik appeals an order of the Superior Court granting a summary judgment in favor of Kitsap County. We hold that genuine issues of material fact exist concerning Kitsap County's alleged negligence and whether the alleged negligence proximately caused injury to Wojcik. Consequently, we reverse the summary judgment and remand the matter for trial.

Wojcik suffered serious injury when an automobile he was driving on a Kitsap County road went out of control, struck a utility pole at the side of the road, and overturned. Wojcik commenced this action in Pierce County Superior Court against Kitsap County, the Chrysler Corporation, and Puget Sound Power and Light Company.[1] Wojcik claimed that Kitsap County was negligent in two respects: (1) in improperly striping the centerline of the roadway to warn motorists against passing, and (2) in failing to construct properly and maintain the shoulder of the roadway. He contended, further, that Kitsap County's negligence proximately caused the accident and his resultant injuries.

Kitsap County moved for summary judgment, supporting its motion with excerpts from depositions of Wojcik and William Howell, who was a witness to the accident, as well as excerpts from the depositions of two highway engineers, John Bollard and Andrew Ramisch. Wojcik countered with his own affidavit; an affidavit of Edward Stevens, a highway engineer; and additional excerpts from his deposition; as

---

[1]Chrysler, the manufacturer of the car, and Puget Power, the owner of the utility pole, have settled their differences with Wojcik and have been dismissed as defendants.

well as deposition testimony of Pastor Minton, Stevens and Ramisch.

The materials submitted to the trial court on summary judgment, when viewed most favorably to Wojcik, reveal that on the afternoon of June 18, 1982, Wojcik was operating his automobile on the Long Lake County Road in Kitsap County. At that time, he was following behind an automobile driven by his girl friend, Melissa Hintz. Wojcik, believing that Hintz was driving too fast, decided to pass her in order to get ahead of her to slow her down.

Wojcik was unable to pass immediately because of curves in the roadway. The area through which he had just passed was denominated a no passing zone by a double yellow "no passing" stripe. Eventually, after checking the roadway ahead of him through his girl friend's rear window, Wojcik attempted to pass Hintz. At the point he began his pass, there was no double yellow line on the roadway.

As Wojcik pulled up beside his girl friend's car in his effort to pass, he saw a car coming toward him, which he claims he had not observed before because it was hidden in a dip in the road ahead of him. To avoid the oncoming vehicle, Wojcik steered quickly to the right in order to pull in behind his girl friend's automobile. He then began to go out of control and, consequently, steered to the left to regain control. His automobile went into a "broadside slide," perpendicular to the centerline of the roadway. The slide continued until the rear end of his vehicle struck a utility pole just beyond on the shoulder of the roadway. The car spun around and rolled over. Wojcik was severely injured. There was evidence that Wojcik had been drinking before the accident and that he was exceeding the speed limit when he overtook Hintz.

Kitsap County centers its motion for summary judgment principally on Wojcik's deposition. In his deposition, Wojcik concedes that he was very familiar with the stretch of road near the accident site because it was close to his home and because he drove the roadway frequently.

He admitted that he was aware of the speed limit (40 m.p.h.), that the road had only two lanes, that there was a curve immediately before the accident site, and that there was a dip in the road between the curve and the accident. He also made the following admissions:

Q You were aware of both of those conditions [curve and dip] at the time of the accident?

A They weren't in my mind at the time, but I've travelled it.

Q So as you were driving up towards the accident site on the day of the accident, you knew generally what kind of features the road was going to have?

A Yes.

Q Did you need any sign or anything to tell you that?

A No, I did not.

Q Did you need any markings on the road to tell you that?

A No.

Q Because you already knew?

A Yes.

Wojcik also acknowledged, in his deposition, that he was not conscious of the absence of the double yellow lines at the point where he began his passing maneuver. However, in his affidavit, he said that no double yellow lines existed at the point where he began to pass.

The thrust of Kitsap County's motion was that no factual issue on proximate cause existed. It contended that even if the County had been negligent, Wojcik had produced no facts showing that its negligence caused his injuries. The County argued that the lack of a no passing stripe at the point Wojcik began to pass is irrelevant because Wojcik admitted that he was well familiar with the road and that he did not need markings to advise him of that which he already was aware, *i.e.,* the dip in the roadway. In short, it argues that Wojcik was not deceived by the County's negligence, if any.

Insofar as the alleged inadequacies of the roadside are concerned, the County argues again that even if it had been negligent, there was no evidence that the accident would

not have occurred if the alleged roadside inadequacies had been cured.

Wojcik, in defending against the County's motion, relied heavily on the assertions of Stevens and Ramisch. Stevens indicated that the county road was unsafe at the accident site because the double yellow line did not extend far enough past the curve to provide a warning to drivers who might consider making a passing maneuver at the location where Wojcik attempted his pass. Stevens said that the double yellow lines ended approximately 100 feet short of where they should have ended according to the Manual of Uniform Traffic Control Devices (MUTCD). Ramisch opined that the condition of the roadside shoulder at the accident site violated several highway design standards in that the shoulders were too narrow and too sloped and there was no guardrail at the accident site. He stated that a guardrail should have been installed "in the absence of providing the flatter slopes." He was of the opinion that if "the guardrail were there, . . . the car wouldn't have rolled over."

The trial court granted summary judgment to Kitsap County, concluding that there were no material fact issues and that the County was entitled to judgment as a matter of law.

Wojcik appeals to this court, assigning error to the summary judgment order. Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Barrie v. Hosts of Am., Inc.*, 94 Wn.2d 640, 643, 618 P.2d 96 (1980). A material fact is one upon which the outcome of the litigation depends. On review, this court must accept all facts as true and consider all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Dickinson v. Edwards*, 105 Wn.2d 457, 461, 716 P.2d 814 (1986). An inference is a "process of reasoning by which a fact or proposition sought to be established is deduced as a *logical consequence* from other facts, or a state of facts, already proved or admitted". *Dickinson*, 105

Wn.2d at 461. A summary judgment motion is properly granted only if, from all of the evidence, reasonable men could reach but one conclusion. *Barrie,* 94 Wn.2d at 642.

Issues of negligence and proximate cause generally are not susceptible to summary judgment. *LaPlante v. State,* 85 Wn.2d 154, 159, 531 P.2d 299 (1975). However, such issues may be decided on summary judgment under the guidelines described above. *Barrie v. Hosts of Am., Inc., supra.*

The trial court concluded that there were no facts showing that Kitsap County was negligent and that, in any case, there was no showing that its acts proximately caused Wojcik's injuries. We, of course, engage in the same inquiry as that of the trial court. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Having done just that, we conclude that there are material issues of fact concerning both the alleged negligence of the County and proximate cause, and that the trial court erred in concluding otherwise.

On the negligence issue, we note that Kitsap County's brief is almost entirely devoted to its contention that its alleged negligence was not the proximate cause of the accident and resultant injuries. Nevertheless, we do not assume that the County is conceding that material fact issues exist concerning its negligence, and we will, consequently, discuss the existence of factual issues on both negligence and proximate cause.

## I
### NEGLIGENCE

■■ It is clear that material fact issues exist on the question of the County's alleged negligence. Negligence occurs when a party breaches a duty owed to another party. *Hansen v. Washington Natural Gas Co.,* 95 Wn.2d 773, 765, 632 P.2d 504 (1981). A county has a duty to maintain its highways in a reasonably safe condition for its users. *Raybell v. State,* 6 Wn. App. 795, 802, 496 P.2d 559 (1972).

At the time pertinent to this action, failure to comply with uniform state traffic control standards constituted negligence as a matter of law. *Kitt v. Yakima Cy.,* 93 Wn.2d 670, 611 P.2d 1234 (1980).[2]

In this case, witness Stevens testified in his deposition that the county road was unsafe at the location where Wojcik began to pass Hintz. He suggested that the absence of a double yellow line at the point Wojcik began the passing maneuver did not meet the standards of the MUTCD and, consequently constituted an unsafe condition.[3] This, together with Wojcik's explanation of the accident, is sufficient to make the issue of the County's negligence in this respect a question for a jury.

Insofar as the condition of the roadside is concerned, witness Ramisch testified that at the critical point the highway shoulder was too narrow to afford an adequate recovery area for vehicles going out of control, and that the slope of the shoulder was too great. He also ventured the opinion that the highway was deficient in the respect that a guardrail was not located along the shoulder where the incline was steep. He opined that these deficiencies constituted violations of highway safety standards. This testimony also creates a fact question for the jury.

---

[2]Because this action was filed before the adoption of the tort reform act, RCW 5.40.050, which states that failure to comply with a state rule or ordinance is merely evidence of negligence, does not apply.

[3]At oral argument, counsel for the County argued that Stevens and Ramisch's expert credentials were not set forth in their affidavits or depositions, and that the judge hearing the summary judgment could not, therefore, consider them to be experts. This was not raised at the trial level, there being no motion to strike the material for that inadequacy. *Esmieu v. Schrag,* 88 Wn.2d 490, 496, 563 P.2d 203 (1977). The point also was not made in the County's appellate brief. *See Daughtry v. Jet Aeration Co.,* 91 Wn.2d 704, 709–10, 592 P.2d 631 (1979). Furthermore, the same complaint could be made about the credentials of the County's experts. Indeed, the County relied on Ramisch's deposition to some extent in support of its motion.

## II
## PROXIMATE CAUSE

█ We believe that issues of material fact exist on the question of proximate cause as well. The proximate cause of an injury is "that cause which, in a natural and continuous sequence, unbroken by any new, independent cause, produces the event, and without which that event would not have occurred." *Stoneman v. Wick Constr. Co.*, 55 Wn.2d 639, 643, 349 P.2d 215 (1960). If the event would have occurred regardless of the defendant's conduct, that conduct is not the proximate cause of the plaintiff's injury. *Davis v. Globe Mach. Mfg. Co.*, 102 Wn.2d 68, 74, 684 P.2d 692 (1984).

## A
## Striping on Road

█ The County argues that the striping did not proximately cause the accident because Wojcik was familiar with the road and, therefore, did not need to be warned of that which he was aware. While it is true that persons cannot complain of a lack of warning of a danger of which they have knowledge, *Tanguma v. Yakima Cy.*, 18 Wn. App. 555, 559, 569 P.2d 1225 (1977), that knowledge must be specific and not general. *Smith v. Acme Paving Co.*, 16 Wn. App. 389, 395, 558 P.2d 811 (1976) (fact that plaintiff knew the existence of poles in the road not enough to establish knowledge of danger because the plaintiff did not know exact location of the particular pole involved in the accident).

Here, Wojcik admitted that he generally knew the road and the fact that it had a curve and a dip at the location of the accident. However, this is not enough to establish that he was aware *specifically* of the danger. Wojcik was not asked nor did he say that he knew that the dip in the road, with which we are here concerned, could obscure his view of an oncoming vehicle.

The County also argues that the striping was not the proximate cause of the accident, suggesting that Wojcik was

not aware of the condition of the striping when he began his passing maneuver. The County is correct in stating that the failure to warn or mistaken warning cannot be the proximate cause of an accident where the plaintiff was not misled or deceived thereby. *Johanson v. King Cy.*, 7 Wn.2d 111, 121, 109 P.2d 307 (1941); *Nakamura v. Jeffery*, 6 Wn. App. 274, 276, 492 P.2d 244 (1972).

In support of its contention, the County correctly observes that Wojcik stated in his deposition that he was not aware of the absence of the no passing lines when he began his pass. Further, Wojcik did not state in his deposition that he would not have passed had there been a no passing stripe. However, in his affidavit Wojcik indicates that he did not begin passing until the end of the double yellow lines. Wojcik stated also that he believed that the no passing striping terminates at the end of the curve and that he did not begin his pass until he was out of the curve. These statements in his affidavit, although arguably at odds with his deposition testimony, were before the court, and when viewed in the light most favorable to Wojcik they create a reasonable inference that he began to pass when he came to the end of the no passing stripe, and that he would have been alerted to avoid passing if the no passing stripe had been in place. The evidence, therefore, raises a fact question as to whether the allegedly inadequate striping proximately caused the accident and resulting injuries.

B
Condition of Road Shoulder

Under the definition of proximate cause stated above, the evidence creates an issue as to whether Wojcik's accident and injuries would have occurred had the shoulder been in compliance with applicable safety standards. Stevens indicated in his deposition that the shoulder was too narrow and too steep and in the absence of a more level shoulder, a guardrail should have been in place. From this evidence, we can infer that Wojcik might have been able to regain control of his vehicle had the County adequately maintained

the shoulder and that a guardrail may have prevented the vehicle from rolling over. While we do not know precisely at what point Wojcik sustained his injuries, we reasonably can infer that the rolling over caused at least some of his injuries. Therefore, an issue of fact exists as to whether the County's improper maintenance of the road shoulder proximately caused Wojcik's injuries.

We reverse and remand for trial.

PETRICH and WORSWICK, JJ., concur.