[No. 27508-9-I.    Division One.    December 20, 1991.]

DAVID JOHN GRIMSRUD, *Appellant*, v. THE STATE OF WASHINGTON, ET AL, *Respondents*.

*Philip Mahoney,* for appellant.

*Richard C. Robinson* and *Lee, Smart, Cook, Martin & Patterson, P.S., Inc.,* for respondents.

KENNEDY, J. — Appellant David Grimsrud (Grimsrud) appeals the trial court's grant of summary judgment to respondents State of Washington and Watson Asphalt Co. (respondents). Grimsrud contends that respondents were negligent in failing to warn motorists adequately of dangers existing in a road construction project and that the failure to warn proximately caused his accident. We reverse the summary dismissal and remand for trial.

I

On August 9, 1985, at approximately 8:55 p.m., appellant David Grimsrud was riding a motorcycle and pulling a trailer northbound on State Route 97. The northbound lane in which Grimsrud was traveling recently had been paved, leaving a 4-inch drop from the northbound lane to the southbound lane. A car driven by Mr. Carroll pulled onto the roadway in front of Grimsrud. Grimsrud moved into the southbound lane to pass Mr. Carroll. In attempting to return to the raised northbound lane, Grimsrud's motorcycle and trailer flipped.

Grimsrud brought an action against respondents, State of Washington and Watson Asphalt Co. and against Mr. Carroll, seeking to recover for his injuries. Grimsrud asserted that respondents had inadequately warned motorists of the dangerous condition of the road. Grimsrud claimed that he did not see any signs warning of the abrupt lane edge and that if he had seen such signs, he would not have attempted to pass the Carroll vehicle.

Respondents moved for summary judgment arguing that the site of Grimsrud's accident was well marked with signs warning of the abrupt lane edge and that the signs were in accordance with the *U.S. Dep't of Transp., Manual on Uniform Traffic Control Devices for Streets and Highways* (MUTCD). Respondents asserted that as a matter of law their signs provided adequate warning to Grimsrud as to the condition of the road. The court granted respondents' motion for summary judgment.

Grimsrud timely appealed to this court.

II

In determining whether an order of summary judgment has been properly entered, this court must engage in the same inquiry as the trial court. *Rhea v. Grandview Sch. Dist. JT 116-200*, 39 Wn. App. 557, 559, 694 P.2d 666 (1985). Generally, issues of negligence are not susceptible to summary judgment. *Wojcik v. Chrysler Corp.*, 50 Wn. App. 849, 854, 751 P.2d 854 (1988); *Mejia v. Erwin*, 45 Wn. App.

700, 704, 726 P.2d 1032 (1986). However, after viewing the evidence in the light most favorable to the nonmoving party, a motion for summary judgment should be granted if there is no genuine issue of material fact or if reasonable minds could reach only one conclusion on that issue. *Sea-Pac Co. v. United Food & Comm'l Workers Local Union 44*, 103 Wn.2d 800, 802, 699 P.2d 217 (1985). In the instant case, we must determine whether reasonable minds could only conclude that, at the time of the accident, the signs warning of the abrupt lane change sufficiently apprised a motorist using reasonable care that the roadway was not in safe condition for ordinary travel.

Respondents first assert that they have not breached any duty owed to Grimsrud, thus, they cannot be found negligent as a matter of law.

■■ Actionable negligence occurs when a party breaches a duty owed to another. *Wojcik*, 50 Wn. App. at 854. Respondents have a duty to ensure that:

> streets be maintained in a reasonably safe condition and that users be reasonably and adequately warned of any inherently dangerous or deceptive conditions and, in certain instances, that adequate barriers be placed and maintained. We think the rule is particularly applicable where the conditions complained of arise out of the actual construction, repair, and maintenance of the roadway.

(Citations omitted.) *Smith v. Acme Paving Co.*, 16 Wn. App. 389, 393-94, 558 P.2d 811 (1976); *see also Bulette v. Bremerton*, 34 Wn.2d 834, 837, 210 P.2d 408 (1949) (stating that "it is the duty of a municipal corporation to exercise ordinary care to keep its streets in a reasonably safe condition for ordinary travel for persons using them in a proper manner and exercising due care for their own safety."). Respondents owed Grimsrud a duty to maintain the roadway in a reasonably safe condition for travel and to adequately warn Grimsrud of any dangerous conditions resulting from the construction. Whether respondents breached this duty is a question of fact unless reasonable minds could only conclude that respondents maintained the roadway in a reasonably safe condition and that they adequately warned

motorists of the inherently dangerous condition of the road-way.

Respondents assert that the roadway was signed in accordance with the MUTCD, thus, respondents assert as a matter of law they were not negligent. In support of their motion for summary judgment, respondents presented an affidavit by Trooper George Lane. Trooper Lane arrived on the accident scene at 9:30 p.m. Trooper Lane investigated the accident and stated that signs warning of the abrupt lane edge were in place.

Respondents also presented an affidavit by John Sloss, a construction inspector for the Department of Transportation who inspected the site of the accident on the day of the accident and the next day. Sloss stated that on August 9, 1985, he inspected the project location and that "temporary construction signs, including abrupt lane edge signs, were properly placed in accordance with the MUTCD throughout the project."

In addition, Sloss attached to his affidavit a map of the project, excerpts from the construction project diary, and copies of photographs depicting permanent signs and temporary construction signs and their locations. A diary entry for August 9, 1985, notes that at 7 p.m. the abrupt lane edge signs were in order throughout the project. Photographs reveal that the abrupt lane edge signs were placed on stand-up easels that are lower than permanent signs. Photographs and maps also reveal that at the site of the accident there was a permanent "pass with care" sign and before the accident site there were "do not pass" signs.

■ Contrary to respondents' arguments, the MUTCD does not resolve the factual issue of whether the signs stating "abrupt lane edge" provided an adequate warning to motorists as a matter of law. The MUTCD does not specify what is an adequate warning to motorcyclists or drivers of cars for an abrupt lane edge; the MUTCD provides that "[f]requent and abrupt changes in geometrics, such as . . . dropped lanes . . . should be avoided." MUTCD § 6A-5(2)(b). The MUTCD also states that:

Adequate warning, delineation, and channelization by means of proper pavement marking, signing, and use of other devices which are effective under varying conditions of light and weather should be provided to assure the motorist of positive guidance in advance of and through the work area.

MUTCD § 6A-5(3)(a).

Moreover, the section covering regulatory signs mandates that "[s]igns shall be placed in positions where they will convey their messages most effectively . . .". MUTCD § 6B-3. The messages of warning signs should be clearly understandable. MUTCD § 6B-11. The purpose of warning signs is to:

notify drivers of specific hazards which may be encountered, when those operations are underway. . . . Drivers should be properly alerted to possible dangers ahead in sufficient time to adjust their speed for the hazard.

MUTCD § 6B-12. Finally, high level warning devices should be used to supplement other signs "to alert motorists of construction and maintenance activities or obstructions in the roadway and are designed so as to be seen over the top of preceding vehicles." MUTCD § 6C-11.

Although Sloss's affidavit indicates that all the warning signs were "properly placed in accordance with the MUTCD . . .", as can be seen from the above excerpts, the MUTCD requires signs containing "adequate warnings" placed for best visibility. Whether the signs in the instant case contained adequate warnings and whether they were properly placed for best visibility is not answered by the MUTCD; these questions must be determined by the trier of fact.

Respondents also argue that the road condition was not dangerous. Yet the MUTCD discourages abrupt lane edges for the very reason that abrupt lane edges are inherently dangerous to automobiles as well as to motorcycles.

Here, Grimsrud has alleged facts from which a trier of fact could find that respondents' duty to maintain the roadway in a reasonably safe condition and to adequately warn motorists of the dangerous condition of the roadway was breached. In his affidavit, Grimsrud stated that, at the point he passed the Carroll car, there was a permanent sign

in place indicating that vehicles should "pass with care".[1] Grimsrud also stated that he did not see any signs warning of the abrupt lane edge and that he believes he would have seen such signs had they been there.

Although the evidence and all reasonable inferences must be viewed in a light most favorable to Grimsrud, here we can find no reasonable inference that the abrupt lane edge signs were not in place at 8:55 p.m. when there is no evidence to controvert respondents' evidence that they were in place at 7 p.m. and 9 p.m. But that Grimsrud failed to see the signs does give rise to reasonable inferences that they may have been obscured by other traffic, that they were not in the most visible locations, that they were placed too low to be readily visible, and that there were not enough of them to reasonably assure that a motorist whose visibility is temporarily hampered by oncoming headlights, or whose attention is momentarily diverted, would see at least one of them. Furthermore, a reasonable person could conclude that the pass with care sign, which Grimsrud indicates he saw, could mislead a motorist into believing that it would not be hazardous for him to pass a slow-moving vehicle, even if he had seen the abrupt lane edge sign. Thus it is a reasonable inference that the abrupt lane edge sign before the site of the accident failed to provide motorists adequate warning of the hazardous condition of the roadway.

Summary judgment is inappropriate " 'if the record shows any reasonable hypothesis which entitles the nonmoving party to relief.' " *Selberg v. United Pac. Ins. Co.*, 45 Wn.

---

[1]There is also an apparent discrepancy as to exactly where the accident occurred vis-a-vis the permanent "pass with care" sign. This court was provided with exceedingly dim photocopies of photos and handwritten notations alongside and underneath the photos, which in some instances are illegible due to the poor quality of the copies. The photos do not allow this court to fully review the evidence to determine whether a finder of fact could conclude that Grimsrud passed the Carroll vehicle in a no passing zone or within visible range of the "pass with care" sign. However, respondents contend Grimsrud passed in a no passing zone, while Grimsrud's affidavit infers that he observed the "pass with care" sign and that he could see that he had room to pass with respect to oncoming traffic. Clearly these are disputed issues of material fact which require a trial.

App. 469, 474, 726 P.2d 468 (quoting *Mostrom v. Pettibon*, 25 Wn. App. 158, 162, 607 P.2d 864 (1980)), *review denied*, 107 Wn.2d 1017 (1986). Here, the question of whether the signs provided an adequate warning to motorists of the hazardous condition of the roadway is a question of fact for the jury.[2] We therefore hold that the trial court erred in granting respondents' motion for summary judgment.

GROSSE, C.J., and PEKELIS, J., concur.

---

[2]*See Bartlett v. Northern Pac. Ry.*, 74 Wn.2d 881, 882, 447 P.2d 735 (1968) (holding grant of summary judgment in favor of defendants improper (where plaintiff failed to obey speed limit and went off icy road) because jury could find road inherently dangerous and, if jury so found, adequacy of warnings would be question for jury); *Bulette*, 34 Wn.2d at 838 (holding grant of summary judgment in favor of defendants improper where jury could find defendant failed to exercise reasonable care to keep road in adequate condition); *Wojcik*, 50 Wn. App. at 855 (holding grant of summary judgment in favor of defendant improper because question of whether defendant violated highway safety standards was question for jury); *Tanguma v. Yakima Cy.*, 18 Wn. App. 555, 560, 569 P.2d 1225 (1977) (holding grant of summary judgment in favor of defendant improper because question of whether bridge presented an inherently dangerous situation requiring a warning to users was question of fact for jury), *review denied*, 90 Wn.2d 1001 (1978).