[No. 31504-8-I.    Division One.    December 30, 1993.]

RITA S. RUFF, ET AL, *Petitioners*, v. THE COUNTY OF KING, ET AL, *Respondents*.

*Sim Osborn* and *Kargianis & Erickson,* for petitioners.

*Norm Maleng, Prosecuting Attorney,* and *Jill Hendrix, Deputy,* for respondents.

FORREST, J. — Jon Jason Ruff appeals the trial court's order granting King County's motion for partial summary judgment on the ground that the driver was the sole legal proximate cause of the accident. Ruff also seeks review of the trial court's order denying his motion for partial summary judgment, arguing that King County presented no evidence of his comparative fault. We reverse in part and affirm in part the trial court's holdings and remand the case for trial.

On the evening of May 15, 1988, 17-year-old Jon Jason Ruff finished work at the Black Angus Restaurant around 8 p.m. and borrowed a car owned by his friend, Jason Kennedy. He noticed that at least one of the car's tires was bald, that it appeared too small for the rim, and that air was leaking out of it.

He returned to the restaurant at approximately 11:30 p.m. and joined three friends, Kennedy, Colleen Fleming, and Gene Felder, in the parking lot. A fourth friend, Robert Micek, who was driving his own car, a Volkswagen "bug", also joined them. The entire group decided to go to "Bottle Beach" on the Cedar River. Kennedy drove. Ruff and Fleming sat in the back seat. Felder sat in the front passenger seat.

Ruff was aware Kennedy lacked a valid driver's license and had a reputation for "clownish" behavior. In addition,

Ruff and the others witnessed Kennedy performing "360's"[1] in the restaurant's parking lot as they gathered after work. Nonetheless, Ruff, along with the others, entered Kennedy's 1976 Monte Carlo.

In anticipation of the trip, they proceeded to buy beer,[2] cigarettes, and gas at various locations. After the final errand, the two cars, with Micek's Volkswagen in the lead, proceeded downhill on 154th Place S.E. toward the beach. It was dark and raining heavily.

154th Place S.E. is a 2-lane county road with a posted speed of 35 m.p.h. and a double yellow no-passing stripe from its beginning to its intersection with Jones Road. The road runs north to south, proceeding downhill in a southerly direction. A deep drainage ditch runs along its west side. King County concedes that the shoulder width along this part of the roadway was between 7 and 8 feet. 154th Place S.E. ends with a final, shallow curve just north of the intersection with Jones Road.

As the two cars approached the final curve, Kennedy flashed his lights at Micek. Kennedy began to pass Micek's car and accelerated above the 35 m.p.h. posted speed limit. According to Micek, as Kennedy approached the final curve, the car continued to drive straight off the road. Micek saw no brake lights. Felder stated that he saw Kennedy look over his shoulder to see Micek's car, turned his head back and the car was in the middle of the curve ready to go over the embankment. Fleming said she thought Ruff said to Kennedy, "[w]hat are you doing, Jason? Don't try to pass him here."

The car landed upside down in the drainage ditch. Ruff was trapped and suffered a broken neck. He is now a quadriplegic.

---

[1] A "360" occurs when a driver cuts the wheel sharply while accelerating, thereby spinning the car in a tight circle.

[2] Despite having purchased beer, no evidence of alcohol consumption appears in the record.

Kennedy was tried and convicted for reckless driving, minor in possession, and driving without a license. He was sentenced to 90 days in jail.

Ruff sued King County for negligence in breaching its duty to provide reasonably safe roads and highways, including failure to properly design 154th Place S.E. in accordance with applicable standards, failure to provide sufficient width of usable roadway at the shoulder, and failure to maintain the roadway's surface and adjacent area.

Ruff's accident reconstructionists testified that based on, among other things, the road conditions, skidmarks, and angle of departure, Kennedy's car would have had to have been traveling around 50 m.p.h. to have lost control during the attempted pass. Further, given the road's shoulder width and the hazard of the ditch, a "jersey barrier"[3] should have been in place along the roadway. In the view of Jack Winsor, one of Ruff's experts, such a barrier would have deflected the Monte Carlo and "allowed the driver to probably regain control of the vehicle". This point was reiterated by King County's own reconstructionist, Jarvis Michie.

Louis Haff, King County's road engineer, testified that 154th Place S.E. is number 376 on a priority list of 563 county roads selected to receive guardrails. At the time he testified, the county had completed the first 50 projects on the list. Haff was chiefly responsible for this program and initially secured legislative funding from King County Council over three stages to provide guardrails for bridge approaches — the first priority area. He also was able to hire a full-time professional engineer to gather data and develop this prioritization system.

King County Superior Court denied Ruff's motion for partial summary judgment on the issue of King County's affirmative defense of comparative negligence and later granted

---

[3]A "jersey barrier" is a temporary concrete barrier frequently used in place of a guardrail.

King County's motion for summary judgment on the issue of legal causation.

This appeal timely followed.

## STATEMENT OF THE ISSUES

1. May King County avoid suit by invoking discretionary immunity?

2. Did the trial court err in holding that Jason Kennedy's negligent driving was the sole legal proximate cause of Ruff's injuries?

3. Did the trial court properly deny Ruff's motion for summary judgment on the issue of comparative negligence?

## IMMUNITY FROM SUIT

The Legislature abolished the doctrine of sovereign immunity through enactment of Laws of 1961, ch. 136, § 1, p. 1680 (RCW 4.92.090) and the Laws of 1967, ch. 164, § 1, p. 792 (RCW 4.96.010).[4] Governmental entities such as King County are to be treated as private parties and corporations and may no longer remain immune from suit stemming from their tortious conduct. In so directing, the Legislature intended to subject municipalities to the orthodox principles of negligence.[5]

King County asserts that its guardrail prioritization system shields it from liability based on discretionary immunity. We disagree. Consequent to the abolition of sovereign immunity, the Supreme Court has allowed the state and local governments a limited exception when they exercise discretion in forming high level policy. Specifically, the State is immune from suit only if the following questions are answered affirmatively:

> (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objec-

---

[4]*Chambers-Castanes v. King Cy.*, 100 Wn.2d 275, 281, 669 P.2d 451, 39 A.L.R.4th 671 (1983).

[5]*J&B Dev. Co. v. King Cy.*, 29 Wn. App. 942, 631 P.2d 1002, *aff'd*, 100 Wn.2d 299, 669 P.2d 468, 41 A.L.R.4th 86 (1981).

tive as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

*Evangelical United Brethren Church v. State*, 67 Wn.2d 246, 255, 407 P.2d 440 (1965). Thus a governmental entity's exercise of discretionary acts at a basic policy level is immune from suit, but such discretion exercised at the operational level is not.[6]

We find that the timing of installation of guardrails at this location to be the exercise of operational discretion, not discretion as to basic policy.[7] King County principally relies upon *Jenson v. Scribner*[8] to support its position that its guardrail prioritization system fits within the confines of this narrow exception. *Jenson* is distinguishable. In *Jenson*, the plaintiffs sought to prove that the State had negligently delayed the installation of a median barrier on the road in question despite earlier legislative funding approval. The plaintiffs argued that, while the decision to install the barrier was discretionary, resulting from a proposal raised by the Transportation Commission and approved by the Legislature, the manner of its implementation was operational and thus outside the scope of the discretionary immunity privilege. Although the court stated that it was relying on "immunity" to dismiss the complaint, instead it appears to hold that the delay was not an act of negligence because

---

[6]*Chambers-Castanes v. King Cy.*, 100 Wn.2d at 281 ("We have recognized a narrowly circumscribed exception to [the rule abolishing sovereign immunity] in instances involving high level discretionary acts exercised at a truly executive level".).

[7]*See Taggart v. State*, 118 Wn.2d 195, 822 P.2d 243 (1992) (parole officer's negligent supervision not shielded); *see also Chambers-Castanes v. King Cy.*, *supra* (decision to dispatch police officer to crime scene not protected).

[8]57 Wn. App. 478, 789 P.2d 306 (1990).

funding for the median barrier was only made available 5 months before the accident.

Here, King County has not demonstrated that its guardrail program fits within this exception. Unlike *Jenson*, whose median barrier installation program derived from the policymaking of the transportation commission and the Legislature, King County has not established factually that its guardrail installation program is anything more than a routine administrative matter. The County attributes the program's initiation to Haff's efforts and indicates that the King County Council authorized the annual budget. There is no evidence, however, showing that the council had a specific objective in mind or paid particular attention to this project. Funding for road improvements is not the equivalent of exercising a considered policy decision as to one specific guardrail installation. There is no indication that the staff could not change the priority of the projects on the list or that continued funding of the program to complete this project was assured. Nor does the evidence establish that Haff or the special engineer he hired was a "truly executive level" personnel. Therefore the creation and implementation of its guardrail prioritization program does not, under these facts, immunize it from suit.

### LEGAL CAUSATION

King County asserts that even if it was negligent, *Medrano v. Schwendeman*[9] and its progenitors[10] establish that such negligence was not a legal proximate cause of the accident. Finding significant factual distinctions between this case and those relied upon by King County and the trial court, we disagree.

---

[9] 66 Wn. App. 607, 836 P.2d 833 (1992).

[10] *See Stephens v. Seattle*, 62 Wn. App. 140, 813 P.2d 608, *review denied*, 118 Wn.2d 1004 (1991); *Cunningham v. State*, 61 Wn. App. 562, 811 P.2d 225 (1991); *Braegelmann v. Snohomish Cy.*, 53 Wn. App. 381, 766 P.2d 1137, *review denied*, 112 Wn.2d 1020 (1989); *Wojcik v. Chrysler Corp.*, 50 Wn. App. 849, 751 P.2d 854 (1988); *Klein v. Seattle*, 41 Wn. App. 636, 705 P.2d 806, *review denied*, 104 Wn.2d 1025 (1985); *Kristjanson v. Seattle*, 25 Wn. App. 324, 606 P.2d 283 (1980).

■ ■ Recognizing that proximate cause may be a question of law for the court,[11] we have said:

> "There are two elements to proximate cause: cause in fact and legal causation." *Cunningham* [*v. State*,] 61 Wn. App. [562,] 570[, 811 P.2d 225 (1991)] (citing *Hartley v. State*, 103 Wn.2d 768, 777, 698 P.2d 77 (1985)). Cause in fact concerns the actual "but for" consequences of an act — the physical connection between an act and an injury. Legal cause is grounded in policy determinations as to how far the consequences of a defendant's acts should extend. The focus is whether, as a matter of policy, the connection between the ultimate result and the act of the defendant is too remote or insubstantial to impose liability. Legal cause "involves a determination of whether liability *should* attach as a matter of law given the existence of cause in fact"; *i.e.*, whether considerations of logic, common sense, justice, policy and precedent favor finding legal liability. *Hartley v. State*, 103 Wn.2d at 779.

(Citations omitted.) *Medrano v. Schwendeman*, 66 Wn. App. 607, 611, 836 P.2d 833 (1992).

We note that legal causation is fundamental to all tort liability and as such is distinct from the immunity doctrine. The facts justifying absence of legal causation must be unusual. To clarify the factual circumstances which justify a finding of no legal causation where negligence is alleged in a municipality's design and maintenance of its roads, we present a summary of the cases' salient elements.

In *Kristjanson v. Seattle*,[12] the first of the *Medrano* line of cases, the court determined that the City was not a proximate cause of the accident, despite its negligence in not trimming vegetation away from warning signs, as well as in not providing adequate sight distance. In that case the at-fault driver was speeding, legally intoxicated, and crossed the center line. The court determined that "it would be mere guessing" to say that the City's conduct in any way proximately caused the collision which resulted in the other

---

[11] *Johnson v. State*, 68 Wn. App. 294, 300, 841 P.2d 1254 (1992) (Whether proximate cause exists "is normally a factual question for the jury. However, when the facts are undisputed and 'the inferences therefrom are plain and incapable of reasonable doubt or difference of opinion, it is a question of law for the court.' ").

[12] 25 Wn. App. 324, 606 P.2d 283 (1980).

driver's injuries. *Kristjanson v. Seattle*, 25 Wn. App. 324, 326, 606 P.2d 283 (1980).

In *Klein v. Seattle*,[13] the victim's estate contended that the City was negligent in its erection and maintenance of warning signs, because at the time of the accident westbound traffic was being detoured over one-half of what had been an eastbound bridge. The court, while admitting the City was negligent, nonetheless determined that the at-fault driver, not the City, was the legal cause of the fatal accident. The at-fault driver was legally intoxicated, had been speeding, and crossed over the center line, resulting in a head-on collision.

In *Braegelmann v. Snohomish Cy.*,[14] the victim's estate argued that Snohomish County was a legal cause of the accident because, as Snohomish County conceded, it negligently designed and maintained the roadway such that the road did not afford a sufficient sight distance and that the hill's crest should have been 3 feet lower. The court disagreed and placed sole legal cause on the at-fault driver who was legally intoxicated, had been speeding, and crossed over the center line. As in *Klein*, the court determined that as a matter of public policy there is no duty to guard against such extreme conduct.

In *Cunningham v. State*,[15] this court determined that the State's inadequate lighting and road striping leading to an entrance gate of the Naval Submarine Base in Bangor did not rise to the level of legal causation because of the driver's behavior and awareness. There the driver was legally intoxicated, was speeding, did not drive attentively, and admitted the gate was lit well enough for him to be aware of its presence. Further, the court found no evidence that proper lighting and striping would have prevented the accident.

Finally, in *Medrano v. Schwendeman*,[16] King County and Puget Sound Power and Light Company conceded that the maintenance of the road and its shoulder and the placement of

---

[13]41 Wn. App. 636, 705 P.2d 806, *review denied*, 104 Wn.2d 1025 (1985).

[14]53 Wn. App. 381, 386, 766 P.2d 1137, *review denied*, 112 Wn.2d 1020 (1989).

[15]61 Wn. App. 562, 571, 811 P.2d 225 (1991).

[16]66 Wn. App. 607, 609, 836 P.2d 833 (1992).

a power pole may have been causes in fact of the accident. Nonetheless the court determined that each's negligence was "too remote to impose liability". *Medrano v. Schwendeman, supra* at 613-14. Instead, the court concluded that the driver's extreme negligence was the sole legal cause of the accident, as evidenced by the fact that he was convicted of vehicular assault (and thus was found to have been driving recklessly), that he had been speeding, that he had been drinking alcohol immediately prior to the accident, and that he had left the traveled portion of the roadway.

■ The lack of legal causation on the part of a governmental entity arises only where the negligence of the driver is particularly egregious and where it is speculative that the corrective measures implicated would have avoided the result. These factors point to egregious driving when present in extreme form: driving while legally intoxicated or with evidence of alcohol consumption, speeding, inattentiveness, crossing over the center line, and evidence of criminally reckless driving.

Such is not the case here. For purposes of summary judgment, Ruff's experts established the need for guardrails along the final curve of 154th Place S.E. King County also recognized this need and had gone so far as to place the road on its priority list for guardrail installation. Indeed King County's own expert agreed that, had guardrails been in place, Kennedy's car would not have gone over the embankment and that the driver stood a reasonable chance of regaining control of the car. The plea establishes reckless driving, but not every act of reckless driving relieves the County from a duty of care. Proximate cause should be analyzed according to "logic, common sense, justice, policy and precedent." *Cunningham v. State*, 61 Wn. App. 562, 571, 811 P.2d 225 (1991). In light of these considerations we decline to hold that King County's negligence cannot be a proximate cause of Ruff's injuries.

Additionally, two cases support our contention that a finding of no legal causation is inappropriate under these facts. In *Stephens v. Seattle*,[17] the court determined that a negligently

---

[17] 62 Wn. App. 140, 144, 813 P.2d 608, *review denied*, 118 Wn.2d 1004 (1991).

designed curb, which would have caused a reasonable motorcyclist to lose control, created a factual issue where the injured cyclist's speed was not so excessive as to justify a court's finding him the sole legal cause of his injuries. Thus, had the curb been properly designed or marked, the accident may not have occurred. Likewise in *Wojcik v. Chrysler Corp.*,[18] the court reversed a grant of summary judgment because questions of fact existed as to the causal connection between the accident and the road's improper striping and lack of guardrails. In that case the driver had been speeding and drinking and was injured when he attempted to pass another car. Both cases show the heavy burden a municipality bears in establishing a lack of legal causation for its acts of negligence.

■ ■ King County's effort to make its roadways safer is commendable. However, we hold that the County does not acquire immunity by adopting such a program. Nor does the implementation of such a policy of upgrading in itself constitute per se evidence that the existing roadway is negligently designed or maintained. It remains for the trier of fact to evaluate the risk posed by the road condition in light of the County's resources and to decide if the County is negligent, and, if so, to what degree. We reverse the trial court's grant of summary judgment on the issue of legal causation and remand for trial.

### Comparative Fault

■ Additionally, Ruff seeks review of the trial court's denial of his motion for summary judgment holding him free from negligence. Although the denial of a summary judgment motion is ordinarily not an appealable order,[19] we choose to grant review since this issue will remain in the case on remand.[20]

---

[18] 50 Wn. App. 849, 857, 751 P.2d 854 (1988).

[19] *Sea-Pac Co. v. United Food & Comm'l Workers Local Union 44*, 103 Wn.2d 800, 802, 699 P.2d 217 (1985); RAP 2.2(a).

[20] *Waller v. State*, 64 Wn. App. 318, 338, 824 P.2d 1225 (issue raised in cross appeal and discretionary review granted in the interests of judicial economy), *review denied*, 119 Wn.2d 1014 (1992).

Ruff contends that no evidence exists that through his own negligence he contributed to his injuries. King County contends Ruff's knowledge of the car's defects and of Kennedy's driving behavior makes the defense of contributory negligence an issue of fact. We agree with King County and affirm the lower court's ruling to this effect.

■ In deciding whether a person is contributorially negligent, "[T]he inquiry is whether or not he exercised that reasonable care for his own safety which a reasonable man would have used under the existing facts and circumstances, and, if not, was his conduct a legally contributing cause of his injury." *Huston v. Church of God*, 46 Wn. App. 740, 747, 732 P.2d 173, *review denied*, 108 Wn.2d 1018 (1987).

■ Here, Ruff was aware that Kennedy's car had a tire which was bald and ill fitting. Ruff was aware of the weather conditions at the time of the accident. Additional evidence of the car's speed and skid marks gives rise to an inference that the car's condition may have contributed to the loss of control. Thus Ruff's knowledge of the car's condition and his choice to join Kennedy for the ride to the beach would permit a factfinder to reasonably infer some measure of contributory negligence.

Further, Ruff knew that Kennedy had a reputation for being a "clown". Ruff knew Kennedy did not have a driver's license and had seen Kennedy driving recklessly in the parking lot immediately before the accident. Ruff's knowledge of Kennedy's reputation and driving behavior likewise permits an inference that he did not exercise reasonable care for his own safety.

Factual evidence exists in support of King County's theory of contributory negligence. We affirm the trial court's decision to deny Ruff's motion.

GROSSE and KENNEDY, JJ., concur.

Review granted at 124 Wn.2d 1001 (1994).