73 P.3d 1005 (2003)
Connie UNGER, individually and as the Personal Representative of the Estate of Jeremy Unger, deceased; and James F. Unger, Appellants,
v.
Connie CAUCHON and John Doe Cauchon, husband and wife; Joey Cauchon, a single person, Defendants, and
Island County, Respondents.
No. 50379-1-I.
Court of Appeals of Washington, Division 1.
April 21, 2003.
Publication Ordered July 28, 2003.
*1006 Dominic L. Bacetich, Bacetich-Duffy Inc. P.S., Everett, WA, for Appellants.
Michael Patterson, Duncan K. Fobes, Lee Smart Cook et al, Seattle, WA, for Respondents.
AGID, J.
Connie and James Unger appeal the superior court's decision in a wrongful death action denying a motion for change of venue under RCW 4.12.030 and holding as a matter of law that Island County owed no duty to their son, the decedent, because he was driving recklessly. We affirm the trial court's denial of the motion for change of venue, but we reverse summary judgment and remand for trial because there is a genuine issue of material fact that should be decided by a jury.

FACTS
On January 2, 1997, Jeremy Unger died from injuries sustained in a single car accident on Camano Island. Before his death, he was dating Christine Cauchon, who ran away from home about a month before the accident occurred.[1] On the evening of December 31, 1996, Connie Cauchon, Christine's mother, saw Jeremy getting into his Jeep with a girl she believed was her daughter. The Cauchons pursued the Jeep for several minutes, during which Unger was traveling in excess of the posted speed, running red lights, and swerving erratically around other vehicles. After losing the vehicle, Connie telephoned her son, Joey, at home and told him to go to the entrance of Camano Island where she believed Unger was headed to wait for Unger's Jeep. She instructed him to follow Unger and find out if Christine was in the car. While Joey and his girlfriend waited at the marina, Unger passed by in his *1007 Jeep and saw him. Unger sped up, and Joey followed him. The pursuit began on State Road 532, to Cross-Island Road, then onto Camano Ridge Road. It lasted about 30 minutes and involved high rates of speed, swerving, crossing center lines, and turning headlights on and off. The weather that evening was severe. It was raining and reports indicated alert conditions for slides as rising temperatures melted a heavy snowfall that occurred on December 26-27, 1996. Island County declared a state of emergency on December 29, 1996, because of the weather conditions. It urged motorists "to be especially cautious of standing water in the roadways [and warned that the] [t]reacherous driving conditions include[d] snow, ice and slush." On December 31, 1996, it released a media advisory:
Heavy rains and snowmelt in Island County have resulted in several small-scale slides on Whidbey and Camano Islands. Some unstable bluffs or hillsides have slid, causing damage to primarily empty structures or vehicles; some roadways may be partially blocked.
... Standing water or overflowing roadside ditches may impact vehicular traffic. Major roads are open.
. . . .
Media advisories will be forthcoming as the situation changes.
Jeremy Unger successfully "lost" Joey several minutes before the accident on Camano Ridge Road. Unger's single-car accident occurred on a different road, called Camano Hill Road. There were no witnesses to the accident. Unger was injured and airlifted to Harborview Medical Center. He died two days later from his injuries.
The Ungers brought a wrongful death action against Connie and James Cauchon, Joey Cauchon, and Island County. The action against the Cauchons was dismissed with prejudice by stipulation on June 7, 2001. On March 5, 2001, the Ungers brought a motion to change venue, arguing they could not receive a fair and unbiased trial in Island County due to adverse publicity, most of the witnesses to the action lived in Snohomish County, and the ends of justice would be ill served by Island County, which has an apparent conflict of interest. The trial court denied the motion on March 16, 2001. On March 29, 2002, after hearing argument from both parties, the trial court granted Island County's motion for summary judgment, concluding that the defendant was driving recklessly and "the county had no duty to foresee and protect [the decedent] against his extreme reckless driving."

ANALYSIS
I. Change of Venue
A trial court may transfer a case to a different county when it appears by affidavit or other satisfactory proof "[t]hat there is reason to believe that an impartial trial cannot be had therein[,]"[2] and when "the convenience of witnesses or the ends of justice would be forwarded by the change."[3] This court reviews a venue decision for manifest abuse of discretion.[4] An abuse of discretion occurs when no reasonable person would adopt the trial court's position.[5] Due process requires that a trial court grant a motion to change venue when a probability of prejudice to the defendant is shown.[6] The court must consider these nine factors to determine whether a change of venue is proper:
(1) the inflammatory or noninflammatory nature of the publicity; (2) the degree to which the publicity was circulated throughout the community; (3) the length of time elapsed from the dissemination of the publicity to the date of trial; (4) the care exercised and the difficulty encountered in the selection of the jury; (5) the familiarity *1008 of the prospective or trial jurors with the publicity and the resultant effect upon them; (6) the challenges exercised by the defendant in selecting the jury, both peremptory and for cause; (7) the connection of government officials with the release of the publicity; (8) the severity of the charge; and (9) the size of the area from which the venire is drawn.[7]
The Ungers argue that the trial court abused its discretion by refusing to grant its motion under RCW 4.12.030(2) and RCW 4.12.030(3) because the newspaper articles about the accident are inflammatory and prejudicial, providing reason to believe that the Ungers could not receive an impartial trial in Island County, a change in location would be more convenient for witnesses,[8] and the ends of justice are best served by trying the case in a county that is not a party to the action. The County contends that the Ungers failed to provide any evidence supporting the State v. Boot[9] factors or their contention that witnesses would be inconvenienced by the Island County location. We agree with the County for two reasons.
First, the trial court did not abuse its discretion by denying the motion for change of venue under RCW 4.12.030(3).[10] The Ungers claim that it would be more convenient for the witnesses and the attorneys to hold the trial in Snohomish County, and Snohomish County does not have the apparent conflict of interest that an Island County Superior Court does. The County asserts, and we agree, that the Ungers have not offered sufficient evidence to show that the witnesses would in fact be inconvenienced by the venue.[11] Although the County does not respond to the Ungers' argument about the ends of justice and apparent conflict of interest, we reject the Ungers' argument. They offered no evidence that Island County Superior Court could not be impartial in this case. In addition, the Ungers could have chosen, but did not choose, to commence this lawsuit in a different county under RCW 4.12.050. Their failure to do so strongly suggests that they were not concerned that an Island County court would be biased in this case.
Second, the trial court did not abuse its discretion by denying the motion for change of venue under RCW 4.12.030(2)[12] because the Ungers did not provide sufficient evidence that an Island County trial would be unfair. The Ungers provide a single newspaper article to support their contention that they cannot receive an impartial trial in Island County. The article discusses the facts, the parties, the allegations in the complaint, and includes the allegedly inflammatory allegation that the Ungers "want[] money from Island County taxpayers." Other than a copy of the article itself, the Ungers do not provide any evidence establishing the relevant Boot factors. They do not show that the article was widely circulated nor do they name the publication, and the record does not reveal the date the article was published. Because the motion was brought prematurely before jury selection began, the Ungers cannot yet provide any evidence that the article prejudiced potential jurors. In addition, the Ungers have not provided any evidence that they would not receive a fair trial in an *1009 Island County court simply because Island County is a party to the action. Without such evidence, the trial court properly denied the change of venue.
II. Island County's Duty
Summary judgment is proper where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[13] A material fact is one upon which the outcome of the litigation depends.[14] A reviewing court must accept all facts as true and consider all facts and reasonable inferences in the light most favorable to the nonmoving party.[15] "While issues of negligence and proximate cause are not generally susceptible to summary adjudication, courts are not precluded from rendering such judgments.... The issues of negligence and proximate cause must be accorded the same treatment as any other following a motion for summary judgment."[16]
Proximate cause consists of two elements: cause in fact and legal causation.
"Cause in fact refers to the actual (but for) consequences of the act.... The cause in fact determination is not appropriate for summary judgment unless there is but one reasonable conclusion."[17]
Legal causation ... requires a determination of whether liability should attach as a matter of law, given the existence of cause in fact. Determining factors in resolving an issue of "legal causation" have been described as "mixed considerations of logic, common sense, justice, policy, and precedent." ....[18]
The Ungers argue that the trial court did not properly view all facts in the light most favorable to them as the non-moving party. They assert the speed of the vehicle at the time of the accident and the reason why Unger lost control of the vehicle are material facts in dispute, analogizing the situation in this case to that in Stephens v. City of Seattle.[19] In addition, they argue that the trial court erred in concluding as a matter of law that the County does not owe a duty to a negligent driver. In response, the County argues that the trial court properly granted summary judgment because the undisputed evidence shows that Unger was driving recklessly,[20] the County owes no duty to a reckless driver, and it is an unreasonable inference that Unger suddenly changed his behavior within a quarter mile of the accident. We agree with the Ungers because the trial court relied upon case law that was later affected by the Supreme Court's opinion in Keller v. City of Spokane,[21] and there are material issues of genuine fact that should be resolved by a jury.
In this case, the trial court relied upon this court's opinion in Braegelmann v. County of *1010 Snohomish.[22] There, the plaintiff in a wrongful death action appealed a trial court's order granting summary judgment in favor of Snohomish County. Braegelmann and his minor daughter were struck head on in their car by a highly intoxicated driver who was driving on the wrong side of the road. We affirmed the trial court and concluded that although the County conceded it negligently designed and maintained the road,[23] as a matter of public policy it had no duty to protect against the "extreme conduct" of an at-fault driver who was speeding, crossing the center line, and highly intoxicated.[24] Because there was no duty, we concluded there was no legal causation.[25]
The Ungers contend that the Washington Supreme Court's opinion in Keller overrules our opinion in Braegelmann. In Keller, the plaintiff was traveling by motorcycle as fast as 50 miles over the posted speed limit when it hit a car at intersection with no stop signs. A jury found that Keller and the other driver were at fault and the City was not. The Supreme Court reversed because it concluded the instructions improperly permitted the jury to determine the City had no duty at all if it found Keller was negligent. In its analysis, the Supreme Court discussed conflicting opinions[26] about the proper scope of a municipality's duty in building and maintaining roads. Interpreting the cases as a whole, the Supreme Court concluded that the cases "do[] not limit the scope of a municipality's duty to only those using the roads and highways in a nonnegligent manner."[27] It held "that a municipality owes a duty to all persons, whether negligent or fault-free, to build and maintain its roadways in a condition that is reasonably safe for ordinary travel."[28] The court noted that its conclusion is supported by the comment in Washington's pattern instruction for duty, which states that "`[d]uty, as defined by this instruction, is not determined by the negligence, if any, of a plaintiff.'"[29]
Accordingly, the trial court erred in this case by concluding that because Unger was driving recklessly, the County owed him no duty as a matter of law. Although the jury instruction approved in Keller does not say so,[30] we read the opinion to require the court to determine, or properly instruct a jury to determine, that a municipality's duty is independent of the plaintiff's negligence. Thus, the County owed Unger a duty, regardless of his allegedly negligent conduct, to make the road safe for ordinary travel. It is for the jury to decide whether the County's construction or maintenance of Camano Hill Road created a condition that was unsafe for ordinary travel and whether the condition of the road contributed to Unger's accident and death. Genuine issues of material fact exist about the proximate cause of Unger's death, which makes summary judgment improper.
*1011 There is evidence in the record that the road was not maintained in a safe condition for ordinary travel on the night in question[31] and on other rainy days. There is evidence provided by deposition and the police accident report that there was loose gravel, mud, and debris in the roadway at the time of the accident.[32] A deposed witness named Karla Wilson, who eventually discovered Unger's body on the side of the road, testified that her car swerved when it hit "the wash-out"[33] on the same evening as Unger's accident. Because her husband was following her and she was concerned for his safety, she turned around to the top of the hill to prevent her husband from going through the area too fast. Nancy Tengelin, a deposed witness who lived on the property where Unger's Jeep was found, stated that one of the drain culverts has been "plugged up" for the past several years, so when "there's a heavy rainfall [the other culvert] gets clogged up and [the water] goes across Camano Hill Road." She stated that "a lot of times there will be a creek that goes across the county road from the plugged culvert, and sometimes you can even see the ripples from the almost creek that forms." She also testified that to her knowledge the County never responded to the problem. She also noted that since Jeremy's accident, Island County has maintained the culvert and no water runs across Camano Hill Road in heavy rain anymore.[34] The County argues we should reject this evidence because it is outside the general knowledge of a lay person. But both Wilson's testimony about the driving conditions on Camano Hill Road and Nancy Tengelin's testimony about the condition of the intersection in heavy rain are based on their own experiences. Neither purports to give expert testimony about the design or dangerousness of the road. Instead, they provide evidence that there was a pre-existing drainage problem at the accident location and the inadequate drainage continued to be a problem on the night of the accident. Viewing this evidence in the light most favorable to the nonmoving party, we determine that summary judgment was improper in this case. The extent to which Unger's reckless driving and the County's failure to maintain the road contributed to Unger's death is a question for a jury.
We reverse and remand.
ELLINGTON and SCHINDLER, JJ., concur.
NOTES
[1] She reportedly ran away for weeks at a time before and during her relationship with Unger.
[2] RCW 4.12.030(2).
[3] RCW 4.12.030(3).
[4] West v. Osborne, 108 Wash.App. 764, 770, 34 P.3d 816, review denied 145 Wash.2d 1012, 37 P.3d 292 (2001).
[5] State v. Boot, 89 Wash.App. 780, 786, 950 P.2d 964 (citing State v. Nelson, 108 Wash.2d 491, 504-05, 740 P.2d 835 (1987)), review denied, 135 Wash.2d 1015, 960 P.2d 939 (1998).
[6] Id. (citing State v. Crudup, 11 Wash.App. 583, 586, 524 P.2d 479, review denied, 84 Wash.2d 1012 (1974)).
[7] Id. (quoting Crudup, 11 Wash.App. at 587, 524 P.2d 479).
[8] The Ungers note that the Island County courthouse is on Whidbey Island, while the appellants live on Camano Island, all expert witnesses are located in King County, and several fact witnesses live in Snohomish County.
[9] 89 Wash.App. 780, 950 P.2d 964, review denied, 135 Wash.2d 1015, 960 P.2d 939 (1998).
[10] RCW 4.12.030(3) states:

The court may, on motion, in the following cases, change the place of trial when it appears by affidavit, or other satisfactory proof:
. . . .
(3) That the convenience of witnesses or the ends of justice would be forwarded by the change ...
[11] Lincoln v. Transamerica Inv. Corp., 89 Wash.2d 571, 573 P.2d 1316 (1978) (holding a trial court's refusal to grant a change in venue was proper when the moving party did not provide the court with substantial evidence that the witnesses were in fact inconvenienced).
[12] RCW 4.12.030(2) states:

The court may, on motion, in the following cases, change the place of trial when it appears by affidavit, or other satisfactory proof:
. . . .
(2) That there is reason to believe that an impartial trial cannot be had therein;
[13] Wojcik v. Chrysler Corp., 50 Wash.App. 849, 751 P.2d 854 (1988).
[14] Id.
[15] Id.
[16] LaPlante v. State, 85 Wash.2d 154, 159, 531 P.2d 299 (1975).
[17] Braegelmann v. County of Snohomish, 53 Wash.App. 381, 384-85, 766 P.2d 1137, review denied, 112 Wash.2d 1020 (1989) (quoting Baumgart v. Grant County, 50 Wash.App. 671, 673, 750 P.2d 271, review denied, 110 Wash.2d 1033 (1988)).
[18] Id. (quoting King v. City of Seattle, 84 Wash.2d 239, 250, 525 P.2d 228 (1974)).
[19] 62 Wash.App. 140, 813 P.2d 608, review denied, 118 Wash.2d 1004, 822 P.2d 289 (1991). In Stephens, this court concluded that summary judgment was improper when a traffic expert indicated that if Stephens, who was injured in a motorcycle accident, had been traveling at 40-45 m.p.h. at impact, the cause of the accident was the design of the roadway. An eyewitness estimated Stephens' speed at 50-60 m.p.h. Taking the evidence in a light most favorable to Stephens, we accepted the 50 m.p.h. estimate and concluded that the 5 m.p.h. difference was not so significant to justify holding as a matter of law that the proximate cause of the accident was Stephens' own negligence.
[20] It is undisputed that up to one quarter mile from the accident site, which is where the chase ended and the last time anyone saw Unger, he was driving in excess of 70 m.p.h. where the posted speed was between 35 m.p.h. and 50 m.p.h., and he was driving with his headlights off.
[21] 146 Wash.2d 237, 44 P.3d 845 (2002).
[22] 53 Wash.App. 381, 766 P.2d 1137, review denied, 112 Wash.2d 1020 (1989).
[23] An expert witness testified that the posted speed limit for the road was set too high and the crest of the hill should have been three feet lower to provide adequate sight distance. Braegelmann, 53 Wash.App. at 385, 766 P.2d 1137.
[24] Id. at 386, 766 P.2d 1137.
[25] Id. (citing Klein v. City of Seattle, 41 Wash. App. 636, 705 P.2d 806 (holding as a matter of public policy, a city cannot be expected to guard against another at-fault driver who was negligently driving 20-30 m.p.h. over the posted limit, crossing the center line, and had a blood alcohol content of .04 percent), review denied, 104 Wash.2d 1025 (1985)).
[26] The court lists an array of conflicting views and the cases supporting them in its opinion. See Keller, 146 Wash.2d at 246-47, 44 P.3d 845.
[27] Id. at 249, 44 P.3d 845.
[28] Id. (emphasis added). The Court only overruled one case in Keller, stating that "[a]lthough several Court of Appeals cases state that municipalities only owe a duty to non-negligent users of their roadways, with the exception of Wick v. Clark County, 86 Wash.App. 376, 936 P.2d 1201, review denied, 133 Wash.2d 1019, 948 P.2d 387 (1997), these cases are factually distinguishable because the streets were found to be safe for ordinary travel." Id. at 254-55, 44 P.3d 845.
[29] Id. (quoting Berglund v. Spokane County, 4 Wash.2d 309, 321, 103 P.2d 355 (1940)).
[30] The proposed instruction stated: "A [County] [City] [Town] [State] has a duty to exercise ordinary care in the [construction] [repair] [maintenance] of its public [roads] [streets] [highways] to keep them in a reasonably safe condition for ordinary travel." Id. at 254, 44 P.3d 845.
[31] The County argues that it was doing all it could to maintain the roads on the night of the accident. It issued advisories warning motorists and claims the dangerous conditions were the result of "unavoidable acts of God." The adequacy of these warnings and the evidence suggesting the County failed to maintain the roadway in a condition safe for ordinary travel on days with less severe weather are issues the jury must weigh and resolve.
[32] In his deposition, Trooper J.A. Meldrum stated that from his investigation, it appeared quite likely that Unger lost control of his vehicle when it encountered the mud, gravel, and water that covered the roadway. The County offered no lay or expert evidence to refute this statement.
[33] She described the "washout" as "a lot of water running over the road and dirt and gravel."
[34] Recognizing that a court may not consider inadmissible evidence when ruling on a motion for summary judgment, Dunlap v. Wayne, 105 Wash.2d 529, 535, 716 P.2d 842 (1986), it is important to note that although this evidence would not be admissible as a later remedial measure to prove negligence, it might be admissible to rebut a contention that the County was not responsible for maintaining the culvert or that precautionary measures were not feasible. ER 407.