[Nos. 26175-4-I; 26002-2-I. Division One. June 10, 1991.]

CHESTER D. CUNNINGHAM, *Appellant,* v. THE STATE OF WASHINGTON, ET AL, *Defendants,* MANZA, MOCERI, GUSTAFSON & MESSINA, P.S., *Respondent.*

*Mark J. Dynan,* for appellant.

*Mark P. Scheer, Charles C. Huber,* and *Lane Powell Spears Lubersky,* for respondent.

AGID, J.—Chester D. Cunningham appeals two summary judgment orders under which the court dismissed all of his claims against the Manza, Moceri, Gustafson & Messina (Manza Moceri) law firm. He contends that the trial court erred in giving preclusive effect to a partial summary judgment order entered in a related federal district court action, and in ruling as a matter of law that there were no genuine issues of material fact as to his remaining negligence claims. We affirm.

In the early morning hours of March 6, 1983, Cunningham drove into a concrete bollard situated in front of the Luoto Road gate to the Naval Submarine Base at Bangor. Cunningham was legally intoxicated at the time of the accident, with a blood alcohol level of at least .22. Cunningham and his passenger, Charles McBride, both sustained serious injuries.

Investigators for Cunningham and McBride concluded that Luoto Road's signage, lighting, and striping did not meet minimum state, federal, or Navy standards, and that safety design standards required the bollard to have been constructed with an impact attenuation device. McBride filed suit in federal court against Cunningham, the United States, and several other entities which he alleged had been involved in the negligent design and construction of the road and gate.

The United States moved for summary judgment against McBride. It argued that it was protected from liability for all of McBride's claims under the discretionary function exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(a). Both McBride and Cunningham opposed the United States' motion. Cunningham's attorneys filed a 17–page responsive memorandum in Cunningham's behalf. Despite Cunningham's and McBride's efforts, the federal court held that the United States' road design, gate design, signage, and bollard design and placement decisions involved conflicting concerns of safety and security and were therefore "of a nature and quality that Congress

intended to shield from liability". The court further held, however, that there was no evidence that the government's lighting and road striping decisions were grounded in concerns of social, economic, or political policy and consequently refused to dismiss McBride's claims on those issues. McBride and Cunningham moved for reconsideration. The court denied their motions. Ultimately, McBride settled all of his remaining claims. Cunningham participated in the settlement.

Cunningham's lawsuit took a different course than McBride's. His original attorneys, Manza Moceri, failed to file a claim against the United States before expiration of the applicable statute of limitations. Through his present attorneys, Cunningham filed suit in King County Superior Court against Manza Moceri and many of the same defendants as were involved in Cunningham's original personal injury suit. Because Cunningham's claim against Manza Moceri is for legal malpractice in failing to timely file a lawsuit, the parties agree that in the state court suit, Manza Moceri stands in the same position as would the United States.

After the McBride settlement, Manza Moceri moved for partial summary judgment in Cunningham's state court action. It argued that because it stood in the same shoes as the United States, the federal court's partial summary judgment order collaterally estopped Cunningham from asserting claims relating to the government's alleged negligent road design, gate design, signage, and its alleged negligent bollard design and placement. The trial judge granted Manza Moceri's motion.

Manza Moceri then moved to dismiss Cunningham's remaining claims relating to the United States' alleged negligence in lighting and striping Luoto Road. Again, the law firm prevailed. As a result of Manza Moceri's two motions, all of Cunningham's claims against Manza Moceri were dismissed. This appeal followed.

### · APPLICATION OF COLLATERAL ESTOPPEL

■ We first consider whether the Superior Court erred in ruling that Cunningham was collaterally estopped from litigating claims dismissed by the federal court's order of partial summary judgment. Collateral estoppel precludes consideration of issues that have previously been actually litigated and determined. Under Washington law, collateral estoppel applies when: (1) the previously decided issue is identical with the one presented in the action in question; (2) there was a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the prior adjudication; and (4) application of the doctrine does not work an injustice on the party against whom the doctrine will be applied. *McDaniels v. Carlson,* 108 Wn.2d 299, 303, 738 P.2d 254 (1987); *Chau v. Seattle,* 60 Wn. App. 115, 119, 802 P.2d 822 (1991). Only the finality requirement is seriously disputed here.[1]

■■ Cunningham argues that the trial court erred in finding collateral estoppel because the partial summary judgment was not a final judgment. He contends that finality for collateral estoppel purposes is the same as finality for determining appealability under CR 54. We recently rejected a similar argument on the ground that such a rigorous finality requirement does not implement the purposes of collateral estoppel: to protect prevailing parties from relitigating issues already decided in their favor, and to promote judicial economy. *Chau,* 60 Wn. App. at 120–21.

With *Chau,* this court aligned itself with the majority of courts which employ a pragmatic approach to determine

---

[1]Cunningham does contend that collateral estoppel was wrongly applied here because it worked an injustice against him. We need not consider this contention because it was not properly raised below. RAP 2.5(a); RAP 9.12. Cunningham's only mention of "injustice" to the trial court was one conclusory allegation that application of the collateral estoppel doctrine worked a grave injustice against him. In any event, the record contains no evidence relating to Cunningham's injustice claim. Absent such evidence, we cannot review the claim on appeal. *E.g., Story v. Shelter Bay Co.,* 52 Wn. App. 334, 345, 760 P.2d 368 (1988).

finality for purposes of collateral estoppel. *See generally* 18 C. Wright, A. Miller, & E. Cooper, *Federal Practice* § 4434, at 321 (1981) (noting that the strict finality requirement has been relaxed in recent decisions in favor of a practical view of finality); 1B J. Moore, *Federal Practice* ¶ 0.441[4], at 745 (1983) ("there has been an increasing judicial intolerance with efforts to avoid decisions made after fair consideration by shifting the scene to another courtroom"). The leading case advocating the pragmatic approach is *Lummus Co. v. Commonwealth Oil Ref. Co.,* 297 F.2d 80 (2d Cir. 1961), *cert. denied,* 368 U.S. 986 (1962), where Judge Friendly wrote:

> Whether a judgment, not "final" in the sense of 28 U.S.C. § 1291 [for purposes of appeal], ought nevertheless be considered "final" in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i. e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review. "Finality" in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.

*Lummus,* 297 F.2d at 89.

The Restatement (Second) of Judgments (1982) embraces the *Lummus* court's pragmatic approach. It states that, for purposes of issue preclusion, a final judgment "includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." Restatement § 13. Factors for a court to consider in determining whether the requisite firmness is present include whether the prior decision was adequately deliberated, whether it was firm rather than tentative, whether the parties were fully heard, whether the court supported its decision with a reasoned opinion, and whether the decision was subject to appeal or in fact was reviewed on appeal. Restatement § 13, comment *g.*

Whether these criteria are met in the case of a partial summary judgment turns on the circumstances of each

case.[2] As one commentator notes, partial summary judgment

> represents a determination that the outcome of the issues is clear. At the same time, it is often vulnerable to appellate reversal. Perhaps preclusion should be available only on showing both that the summary judgment was thoroughly contested in the first action and that substantial burdens would be required to renew the summary judgment in the second action.

18 C. Wright, A. Miller & E. Cooper, *supra* at 325–26.

Cases from other jurisdictions illustrate circumstances in which collateral estoppel is properly applied to a partial summary judgment. In *Carpenter v. Young*, 773 P.2d 561 (Colo. 1989), the trial court entered a partial summary judgment dismissing plaintiffs' malpractice claims against a hospital resident. The plaintiffs then settled with all remaining defendants except the attending physician. The trial court subsequently gave preclusive effect to the partial summary judgment and refused to allow plaintiffs to pursue a respondeat superior claim against the attending physician. Plaintiffs' respondeat superior claim was based on the resident's alleged negligence.

The Colorado Supreme Court upheld the trial court. In so holding, the court first adopted the pragmatic finality approach set forth in *Lummus* and adopted by the Restatement. The *Carpenter* court distinguished between finality for appeal, which is intended to discourage the piecemeal review of an action, and finality for collateral estoppel, which is designed to limit multiple trials on the same claim. 773 P.2d at 568. The court then decided that the particular partial summary judgment order before it was sufficiently final to invoke collateral estoppel. The court found it significant that the granting of the motion

---

[2]Cunningham relies heavily on *Avondale Shipyards, Inc. v. Insured Lloyd's*, 786 F.2d 1265 (5th Cir. 1986), as support for his argument that collateral estoppel should not be applied to an order of partial summary judgment. The *Avondale* court, however, held against preclusion for such an order primarily because the order is not subject to appellate review. 786 F.2d at 1269–73. Because we do not equate finality for purposes of appeal with finality for purposes of collateral estoppel, we do not find *Avondale* persuasive.

"was in no way tentative", that the plaintiff against whom estoppel was asserted had already had ample opportunity to be heard, and that although the summary judgment would ultimately have been subject to review, plaintiffs had waived the right to review when they entered into a settlement agreement. *Carpenter,* 773 P.2d at 568.

Using an analysis similar to that of the *Carpenter* court, other courts have also given preclusive effect to partial summary judgments. In *Scripps Clinic & Research Found. v. Genentech, Inc.,* 678 F. Supp. 1429, 1436–37 (N.D. Cal. 1988), the court reasoned that, when a party's interests were fully and vigorously represented in summary judgment proceedings and the estopped party had an opportunity to present its own views to the court, fairness and considerations of judicial economy favored giving preclusive effect to the proceeding. Similarly, in *Acker v. Huntsville,* 787 S.W.2d 79 (Tex. Ct. App. 1990), the court concluded that, because the parties fully and fairly litigated the issue in the first action in federal court and that proceeding was comparable in quality and extensiveness to that which would occur in a state court action, a federal summary judgment order was properly given preclusive effect.

The considerations which influenced the *Carpenter, Scripps Clinic,* and *Acker* courts to find collateral estoppel are also present in the instant case. Cunningham fully and vigorously litigated the discretionary function exception issue in the first proceeding.[3] The federal judge considered the question and issued a written opinion outlining her reasons for finding the discretionary function exception applicable. The judge was firm in her decision; she denied both Cunningham's and McBride's motions for reconsideration. Moreover, the issue decided was a purely legal one

[3]We reject Cunningham's unsupported assertion that because his claim against the United States has never been tried, he has not fully litigated the issues. A party need not have a full trial in order to have a full and fair opportunity to present his or her case. Cases are routinely decided on summary judgment, a procedure used to avoid needless trials. *E.g., Morris v. McNicol,* 83 Wn.2d 491, 497, 519 P.2d 7 (1974).

governed solely by federal law. A federal judge's decision on such an issue commands special deference; it would, therefore, be a particular waste of judicial resources to relitigate the issue in state court. Accordingly, we affirm the trial court's conclusion that the federal court's partial summary judgment order was sufficiently firm to satisfy the requirements of collateral estoppel.

### DISMISSAL OF NEGLIGENCE CLAIMS

Next we consider whether the trial court erred in granting Manza Moceri's motion to dismiss Cunningham's negligent striping and lighting claims. Based on our determination that the United States' acts were not the legal cause of Cunningham's accident, we affirm the trial court.[4]

There are two elements to proximate cause: cause in fact and legal causation. *Hartley v. State,* 103 Wn.2d 768, 777, 698 P.2d 77 (1985). Cause in fact concerns the actual "but for" consequences of an act. *Hartley,* 103 Wn.2d at 778. Legal cause, on the other hand, is grounded in policy determinations as to how far the consequences of a defendant's acts should extend. It focuses on whether the connection between defendant's act and its ultimate result is too remote or insubstantial to impose liability. *Hartley,* 103 Wn.2d at 779–81. Legal cause "involves a determination of whether liability *should* attach as a matter of law given the

---

[4]We reject Manza Moceri's contention that because Cunningham was intoxicated, he was beyond the scope of the duty owed by a road builder. Its argument is based on a misreading of *Klein v. Seattle,* 41 Wn. App. 636, 705 P.2d 806, *review denied,* 104 Wn.2d 1025 (1985), which does not concern the scope of duty owed by a governmental entity, but instead concerns the legal cause aspect of proximate cause.

The duty owed by a governmental body is to exercise ordinary care "to keep its public ways in a reasonably safe condition for persons using them in a proper manner and exercising due care for their own safety." *Owens v. Seattle,* 49 Wn.2d 187, 191, 299 P.2d 560, 61 A.L.R.2d 417 (1956); *accord, Breivo v. Aberdeen,* 15 Wn. App. 520, 522, 550 P.2d 1164 (1976); Annot., *Liability of Governmental Entity or Public Officer for Personal Injury or Damages Arising Out of Vehicular Accident Due to Negligent or Defective Design of a Highway,* 45 A.L.R.3d 875 § 8[a] (1972). This duty is owed to all drivers, including those who may be intoxicated. *Wojcik v. Chrysler Corp.,* 50 Wn. App. 849, 751 P.2d 854 (1988).

existence of cause in fact"; *i.e.,* whether considerations of logic, common sense, justice, policy and precedent favor finding legal liability. *Hartley,* 103 Wn.2d at 779.

We have carefully examined the record and conclude that neither logic, common sense, justice, nor policy favors finding legal causation here. At the time of the accident, Cunningham had a blood alcohol level of at least .22, more than two times the maximum legal level for automobile drivers. RCW 46.61.502. Cunningham admits that the Luoto Road gate was sufficiently well lighted that he was aware of its presence. Despite this awareness, Cunningham did not significantly lessen the speed at which he traveled and thus collided with the bollard while traveling at least 35 m.p.h. Further, Cunningham did not drive attentively. Indeed, Cunningham's own testimony is that he has no recollection of anything that occurred after coming to within 50 to 200 feet of the bollard with which he collided. Finally, the record is devoid of any evidence indicating that proper lighting and striping would have prevented this accident.

Legal precedent also favors refusing to find legal causation in these circumstances. In *Klein v. Seattle,* 41 Wn. App. 636, 705 P.2d 806, *review denied,* 104 Wn.2d 1025 (1985), the court refused to hold that negligent road design legally caused an accident in which a speeding driver with a blood alcohol level of .04 percent crossed the center line and collided with another vehicle. To find legal causation in such a case, the court opined, would be to impose an insurance policy upon those who construct our highways. 41 Wn. App. at 639. The court reached a similar result in *Braegelmann v. County of Snohomish,* 53 Wn. App. 381, 385–86, 766 P.2d 1137, *review denied,* 112 Wn.2d 1020 (1989), refusing to find legal causation because the County had no duty to foresee the "extreme negligence" of a speeding and intoxicated driver who crossed the center line and struck another car. *See also Kristjanson v. Seattle,* 25 Wn. App. 324, 606 P.2d 283 (1980) (no legal causation when driver involved in accident was intoxicated, speeding, and had crossed the center line); *Cordeiro v. Burns,* __ Hawaii App.

572

___, 776 P.2d 411 (1989) (no legal causation when accident involved a drunk driver who was speeding and was inattentive to his driving).

Cunningham seeks to distinguish these cases on the ground that they involved 2–car accidents, while this case concerns a 1–car accident. For purposes of a legal causation analysis, this is a distinction without a difference. Regardless of how many vehicles are involved, the question in a legal causation analysis is whether, as a matter of policy, the connection between defendant's act and its ultimate result is "too remote or insubstantial to impose liability." *Hartley,* 103 Wn.2d at 781. This is clearly the case here, where a highly intoxicated driver drove full speed into an obstruction of which he admits he was at least somewhat aware.

The summary judgment orders are affirmed.

COLEMAN and KENNEDY, JJ., concur.