IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STEVE SWINGER, | ) | |
| | ) | No. 74703-7-I |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| DOUGLAS J. VANDERPOL, | ) | |
| | ) | UNPUBLISHED OPINION |
| Respondent. | ) | |
| | ) | FILED: December 27, 2016 |
| _____ | ) | |

BECKER, J. — This is an appeal from an order of summary judgment resolving a dispute between neighboring landowners concerning a boundary set by the meandering Nooksack River. Because appellant's claims are barred on procedural grounds and unsupported by the record, we affirm.

Respondent Douglas Vanderpol owns land in Lynden on the east bank of the Nooksack River. Appellant Steve Swinger owns a plot of land on the other side of the river, to the north and west of Vanderpol's property. Swinger applied to participate in the federal Conservation Reserve Enhancement Program. The program pays property owners to commit their land for preservation efforts, such as planting vegetation along rivers to restore and protect fish habitat.

The Whatcom Conservation District, which administers the program locally, began developing a plan for preservation work on Swinger's property. The District created a map detailing where planting would occur. This map

showed planting on the Nooksack's east bank, across the river from Swinger's plot. Swinger claims to own an area of land on the east bank through avulsion, a process that occurs when a river rapidly changes course. Property boundaries remain in the center of the old river channel following avulsion. According to Swinger, the Nooksack abruptly changed course many years ago, causing land that was previously connected to his plot to become part of the east bank.

In December 2011, Vanderpol sent a letter to the District through his attorney, asserting that the land on the east bank that Swinger was attempting to commit for preservation belonged to Vanderpol. Whereas Swinger claimed to own the land through avulsion, Vanderpol claimed to own the same area through accretion or reliction. Both terms describe gradual additions to the land bordering on a river due to slow changes in the river's course. Vanderpol explained in his letter that if accretion or reliction occurs, "the boundary line of the property abutting the river also changes with the river course." He claimed he had been the "sole person occupying, maintaining and making use of the entire property at issue since 1989 when he first started using this area for a pasture area for his cows." He asserted that a survey was necessary to determine property boundaries.

The District suspended Swinger's application and did not proceed with the proposed planting. The District informed Swinger that he would not receive funding for preservation work on the east bank until the ownership issue was resolved. Vanderpol sent a second letter to the District in February 2012,

2

reasserting that he owned the area on the east bank that Swinger was attempting to commit to the program.

Around the same time, Swinger was involved in a lawsuit he had filed against his title insurance company. He claimed, "Three acres of the property east of the river are not accessible by vehicle or pedestrian access. No notification of this covered risk was provided in the title report." The court dismissed this claim on the title company's motion for partial summary judgment on October 14, 2011, because Swinger did not present facts that would prove his ownership of the three acres in question. Swinger did not attempt to obtain review of this ruling. The entire lawsuit against the title company was dismissed in March 2012, and Swinger expressly waived his right to appeal.

In May 2012, Vanderpol commenced a quiet title action in federal court to determine ownership of the area in dispute on the east bank. Vanderpol named Swinger and the United States as parties. The United States owns property next to Vanderpol's, and Vanderpol believed the ownership interests of the United States were also affected by changes in the Nooksack's course.

Vanderpol conceded that the disputed area was previously connected to Swinger's plot. He argued that through accretion or reliction, either he or the United States was the current owner. In the alternative, he argued ownership by adverse possession. Swinger denied Vanderpol's ownership. He asserted a counterclaim for unjust enrichment based on Vanderpol's use of the disputed area.

The federal district court determined it had subject matter jurisdiction under 28 U.S.C. § 1346(f), which grants district courts original jurisdiction over quiet title actions "in which an interest is claimed by the United States." On Vanderpol's motion for summary judgment, the court concluded that Swinger was estopped from relitigating whether he owned land on the east bank because the issue was decided in his suit against the title insurance company. Vanderpol and the United States entered into a stipulation regarding their boundary lines.

Swinger appealed. The Ninth Circuit Court of Appeals concluded that subject matter jurisdiction was lacking because the United States never claimed an interest in the disputed land, as required under 28 U.S.C. § 1346(f). The court vacated the summary judgment order and remanded with instructions to dismiss.

Acting pro se, Swinger then filed the current action against Vanderpol in Whatcom County Superior Court. The complaint alleges unjust enrichment, tortious interference with a contract, and abuse of process. Vanderpol moved for summary judgment, seeking dismissal of Swinger's claims. After a hearing on February 5, 2016, the court granted Vanderpol's motion. Swinger's claims were dismissed with prejudice and Vanderpol was awarded attorney fees and statutory damages. Swinger appeals.

We review summary judgment orders de novo. Lybbert v. Grant County, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). All facts and any reasonable inferences therefrom are viewed in the light most favorable to the nonmoving party. Lybbert, 141 Wn.2d at 34. Summary judgment is proper when there is no genuine issue

4

as to any material fact and the moving party is entitled to judgment as a matter of law. Lybbert, 141 Wn.2d at 34.

We begin with Swinger's claim for unjust enrichment. The trial court dismissed it upon finding it was collaterally estopped by the ruling in Swinger's earlier suit against his title insurance company. In that suit, the ruling was made on a motion for partial summary judgment to dismiss Swinger's claim of access to property on the east side of the river. The court's written order stated the claims were "dismissed based on Plaintiff's lack of ownership of such property."

Swinger maintains that he owns the land on the Nooksack's east bank and Vanderpol's use of this area for grazing his cows constitutes unjust enrichment. He requests restitution plus interest. Vanderpol responds that the court properly dismissed the unjust enrichment claim based on collateral estoppel.

A party claiming unjust enrichment must demonstrate: (1) the defendant received a benefit, (2) the benefit was received at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment. Young v. Young, 164 Wn.2d 477, 484-85, 191 P.3d 1258 (2008). Here, Swinger's unjust enrichment claim relies on the premise that he owns property on the Nooksack's east bank. If he does not own the disputed area, he cannot demonstrate that Vanderpol received a benefit—using another's land without payment—at *Swinger's* expense.

The doctrine of collateral estoppel prevents Swinger from relitigating whether he owns land on the east bank if he already had a full and fair opportunity to present his case on this issue. Pederson v. Potter, 103 Wn. App.

62, 69, 11 P.3d 833 (2000), review denied, 143 Wn.2d 1006 (2001). The requirements for collateral estoppel are: (1) the issue decided in the prior action is identical to the issue in the second action, (2) the prior action ended in a final judgment on the merits, (3) the party to be estopped was a party or in privity with a party in the prior action, and (4) application of the doctrine would not work an injustice. Pederson, 103 Wn. App. at 69, citing Hanson v. City of Snohomish, 121 Wn.2d 552, 561, 852 P.2d 295 (1993).

In Swinger's suit against the title insurance company, the court determined Swinger lacked evidence to prove his asserted ownership interest in "property lying across the Nooksack River to the east of Plaintiff's property." This issue is identical to the issue raised in the present case: whether Swinger can prove he owns the land on the east bank, such that he can claim unjust enrichment against Vanderpol for using that land.

Swinger contends the issue in his prior suit was "whether the title company had failed to disclose defects in title, including an easement on the property on the east side of the river," whereas the issue here is "whether Vanderpol benefited by the use of Swingers property without payment." Brief of Appellant at 12. While it is true that the cause of action was different, each lawsuit depended on Swinger's ability to prove the same factual issue: his ownership of land on the east bank. The first element of collateral estoppel is satisfied.

Regarding the second element of collateral estoppel, a reviewing court must determine whether the prior judgment is sufficiently firm. "Factors for a

court to consider in determining whether the requisite firmness is present include whether the prior decision was adequately deliberated, whether it was firm rather than tentative, whether the parties were fully heard, whether the court supported its decision with a reasoned opinion, and whether the decision was subject to appeal or in fact was reviewed on appeal." Cunningham v. State, 61 Wn. App. 562, 567, 811 P.2d 225 (1991).

Swinger and the title insurance company submitted thorough briefing on Swinger's claim of ownership on the east bank. The transcript of oral argument on the company's motion for partial summary judgment shows that the court informed Swinger he had failed to prove ownership:

> [THE COURT:] I don't think that I have any evidence here that I can look at that's reliable that this Court could determine that that property belongs to you.
>
> . . . .
>
> Again, I don't think there's sufficient evidence, and I think that the only option that this Court has at this point in time is to deny any further motions to amend the pleadings to add new claims or to include that property across the river. There's no basis for it . . . .
>
> MR. SWINGER: Do I not own that property then? Is that what the Court is saying?
>
> THE COURT: You haven't proven to me that you do. You may, but you haven't proven to me, you haven't given to me anything . . . that's reliable evidence that I can look at that says you do. You don't have a document with a legal description that includes that property. . . .
>
> . . . .
>
> . . . nobody sold you anything on the east side of the river. There's no documents when you purchased the property that indicate that you purchased anything other than that property on the north side of the river. That's how your legal description reads.
>
> MR. SWINGER: But that legal description was made a hundred years ago when that river was somewhere else.
>
> THE COURT: I don't know that. I have no testimony to that effect at all. I have the legal description in your deed. That's all I have.

The written order on partial summary judgment, issued October 14, 2011, was firm: The court denied Swinger's claim based on his "lack of ownership" of property across the river. And it was not tentative. On March 1, 2012, the court reviewed and approved a stipulation for dismissal entered into between the parties, and dismissed the entire complaint with a written order stating:

1. All of Plaintiff Steve Swinger's claims that have been asserted and/or that could have been asserted in this cause are hereby dismissed with prejudice and without costs;
2. Plaintiff Steven Swinger hereby waives any right of appeal that may arise out of these proceedings;
3. That each party shall bear their own attorney's fees and costs incurred herein;
4. That the Court's Order awarding attorney fees dated August 27, 2010 is hereby vacated.

Swinger contends dismissal of the action against the title company on March 1, 2012, was the result of a settlement. Swinger asserts that because he settled with the title insurance company, his failure to appeal did not preclude him from raising the same issue of ownership in the present lawsuit against Vanderpol. See Marquardt v. Fed. Old Line Ins. Co., 33 Wn. App. 685, 689, 658 P.2d 20 (1983) ("collateral estoppel should not be applied to judgments of dismissal . . . when based on settlement agreements.") The reason settlement agreements are ordinarily not preclusive is that "the parties could settle for myriad reasons not related to the resolution of the issues they are litigating." Marquardt, 33 Wn. App. at 689.

Other than the order quoted above, the record contains no evidence that the title company lawsuit was dismissed due to a settlement. Approval of a stipulation does not necessarily mean the parties settled. We might reasonably

assume that the order of dismissal reflects an undisclosed settlement whereby Swinger, in exchange for being excused from liability for the title company's attorney fees, agreed to give up his right of appeal as well as a remaining claim for damages under the policy that is mentioned in the summary judgment order of October 14, 2011. But even if that is what happened, the rule stated in Marquardt is not controlling. The estoppel operating in the present case does not come from the final judgment entered in the title company case on March 1, 2012. The estoppel comes from the order on partial summary judgment entered on October 14, 2011.

Finality for the purposes of collateral estoppel, which is designed to prevent more than one trial on the same claim, is different from finality for the purposes of appeal, which is intended to discourage the piecemeal review of an action. Cunningham, 61 Wn. App. at 568. An order on partial summary judgment may be sufficiently final for collateral estoppel purposes even if it is not appealable. Cunningham, 61 Wn. App. at 570. That is the case here. The order of October 14, 2011, firmly dismissed the claims requiring proof of Swinger's ownership. The final order on March 1, 2012, did not change that. The order of October 14, 2011, was sufficiently final to satisfy the second element of collateral estoppel.

The third element is also satisfied. Swinger, the party to be estopped, was a party to the earlier action.

In assessing the fourth element, whether application of collateral estoppel would work an injustice, reviewing courts focus on whether the parties to the

earlier action were afforded a full and fair opportunity to litigate their claim in a neutral forum. Nielson v. Spanaway Gen. Med. Clinic, Inc., 135 Wn.2d 255, 264-65, 956 P.2d 312 (1998).

Swinger contends he was denied the opportunity to introduce evidence against the title insurance company. He also claims to have lacked sufficient motivation to litigate that action vigorously because he did not foresee the collateral estoppel consequences. Swinger states, "The court did not advise or take extra care in advising me of the implications of not providing all documents supporting my ownership of the disputed area." Brief of Appellant at 14.

The court was not obligated to advise Swinger of the consequences of not bringing an appeal. The role Swinger describes is that of a lawyer, not a judge. Swinger chose to act pro se in bringing this lawsuit and the action against the title company. In undertaking the role of a lawyer, pro se litigants assume the duties and responsibilities of a lawyer and are held accountable to the same standard of legal knowledge. Batten v. Abrams, 28 Wn. App. 737, 739 n.1, 626 P.2d 984, review denied, 95 Wn.2d 1033 (1981).

The superior court was a neutral forum for Swinger's case against the title company. The court considered thorough briefing by the parties and heard oral argument. Swinger had a full and fair opportunity to litigate his claim that he owned the property on the east bank, and it was decided against him.

The elements of collateral estoppel are met here. The trial court properly dismissed Swinger's unjust enrichment claim as precluded by the decision in the previous case.

We turn next to Swinger's assertion of a claim that it was an abuse of process for Vanderpol to file the federal lawsuit. He requests reimbursement for the expenses he incurred in result of that litigation. The trial court dismissed Swinger's abuse of process claim for lack of evidentiary support.

To prove an abuse of process, the claimant must demonstrate: (1) an ulterior purpose to accomplish an object not within the proper scope of the process and (2) an act not proper in the regular prosecution of proceedings. Fite v. Lee, 11 Wn. App. 21, 27, 521 P.2d 964, review denied, 84 Wn.2d 1005 (1974). For instance, an abuse of process occurs when a party files numerous improper motions and discovery requests for the purpose of harassing another party. Hough v. Stockbridge, 152 Wn. App. 328, 346-47, 216 P.3d 1077 (2009), review denied, 168 Wn.2d 1043 (2010). "The mere institution of a legal proceeding even with a malicious motive does not constitute an abuse of process." Fite, 11 Wn. App. at 27-28; see also Abrams, 28 Wn. App. at 749 ("filing a lawsuit, although baseless or vexatious, is not misusing process.") "There is no liability if nothing is done with the lawsuit other than carrying it to its regular conclusion." Abrams, 28 Wn. App. at 749.

Swinger first argues Vanderpol's filing of the federal suit was an abuse of process because the court lacked subject matter jurisdiction. Filing suit in a court that lacks jurisdiction does not by itself satisfy either element of an abuse of process claim. There is no evidence that Vanderpol had an ulterior motive. The lawsuit was carried to a regular conclusion when the appellate court dismissed it for lack of jurisdiction.

Swinger next argues it was an abuse of process for Vanderpol to include an adverse possession claim in his federal court lawsuit when he had not paid the taxes on the subject property. Again, Swinger fails to identify evidence satisfying the elements of an abuse of process claim. Assuming for the sake of argument that Vanderpol filed the adverse possession claim without the evidence needed to prove it, that would make his claim baseless, but it would not establish an abuse of process. The trial court properly dismissed the abuse of process claim.

Next, we address Swinger's claim that Vanderpol, through his communications with the District, is liable for a tortious interference with contract. Swinger argues that Vanderpol interfered with Swinger's contract with the Conservation Reserve Enhancement Program. Vanderpol's December 2011 letter to the District asserted that if planting occurred on his property without his consent, he would "pursue his full legal rights and remedies with regards to such an intentional trespass." In his February 2012 letter, he reiterated that he would seek legal recourse if a trespass occurred. Swinger asserts that Vanderpol's "criticism and litigation threat letter" constitutes a tortious interference. He claims damages of $54,370, the amount he would have received for participating in the program.

The information Vanderpol communicated to the District—that he allegedly owned the property Swinger was attempting to commit for preservation—was relevant to the District's decision whether to proceed with a project on Swinger's property. The District is a government agency. See RCW 89.08.020. The trial

court properly dismissed Swinger's interference claim because Vanderpol has a statutory immunity from a suit based on his communications with a government agency. "A person who communicates a complaint or information to any branch or agency of federal, state, or local government . . . is immune from civil liability for claims based upon the communication to the agency or organization regarding any matter reasonably of concern to that agency or organization." RCW 4.24.510. The purpose of this statute is "to protect individuals who make good-faith reports to appropriate governmental bodies," based on a finding that "the threat of a civil action for damages can act as a deterrent to citizens who wish to report information to federal, state, or local agencies." RCW 4.24.500.

The tortious interference claim was properly dismissed for an additional reason. One element of a tortious interference claim is the existence of a valid contract. Calbom v. Knudtzon, 65 Wn.2d 157, 162, 396 P.2d 148 (1964). Swinger's interference claim depends on his having a valid contract with the District. As discussed above in connection with the unjust enrichment claim, Swinger is precluded from asserting that he owns land on the east bank. Swinger cannot prove he has a valid contract with the District as to property on the east bank because he cannot prove he owns that property.

Last, we consider the issue of attorney fees and costs. Relying on RCW 4.24.510, the trial court awarded Vanderpol $10,000 in statutory damages as well as the attorney fees he incurred in obtaining dismissal of Swinger's claim of tortious interference with contract. Vanderpol requests an award of attorney fees and costs for this appeal under the same statute.

A person immune from suit under RCW 4.24.510 "is entitled to recover expenses and reasonable attorneys' fees incurred in establishing the defense and in addition shall receive statutory damages of ten thousand dollars. Statutory damages may be denied if the court finds that the complaint or information was communicated in bad faith." RCW 4.24.510.

Swinger contends it was error for the trial court to award damages and fees under the statute. He cites Gontmakher v. City of Bellevue, 120 Wn. App. 365, 366, 85 P.3d 926 (2004), for the proposition that for RCW 4.24.510 to apply, the information communicated to an agency must concern "potential wrongdoing." He contends that Vanderpol "did not flag" potential wrongdoing by Swinger when he communicated with the District.

The phrase "potential wrongdoing" occurs in Gontmakher, where the opinion explains the background of the statute by quoting legislative findings. Gontmakher, 120 Wn. App. at 371. The legislative findings are stated in RCW 4.24.500:

> Information provided by citizens concerning potential wrongdoing is vital to effective law enforcement and the efficient operation of government. The legislature finds that the threat of a civil action for damages can act as a deterrent to citizens who wish to report information to federal, state, or local agencies. The costs of defending against such suits can be severely burdensome. The purpose of RCW 4.24.500 through 4.24.520 is to protect individuals who make good-faith reports to appropriate governmental bodies.

The quoted language explains why the legislature saw fit to enact the statute; it does not create a requirement or element. The operative language concerning immunity and attorney fees is found in the next section of the statute, RCW 4.24.510. This section does not require that the "complaint or information"

communicated by the speaker must concern wrongdoing in order for immunity to attach.

As discussed above, Vanderpol is immune from suit under RCW 4.24.510 with respect to the tortious interference claim. The court did not find that Vanderpol communicated information to the District in bad faith. Therefore, the trial court did not err in awarding to Vanderpol the mandatory damages of $10,000 as well as the expenses and reasonable attorney fees he incurred to establish the defense of immunity. Subject to compliance with RAP 18.1, Vanderpol is entitled to an award of the attorney fees and costs he incurred in this appeal that are related to the immunity defense under RCW 4.24.510.

Affirmed.

Becker, J.

WE CONCUR:

Trickey, J.