IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STEVEN GIANESINI, | No. 86509-9-I |
| Appellant, | |
| v. | DIVISION ONE |
| ESTATE OF GUDRUN AGUSTA GARY and TYLER GIANESINI, an individual, | UNPUBLISHED OPINION |
| Respondents. | |

CHUNG, J. — The trial court dismissed Steven Gianesini's petition pursuant to the Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW, concerning the Estate of Gudrun Agusta Gary ("Estate") because it raised issues nearly identical to those in a separate probate action and there was an insufficient showing of a need for discovery. He appeals the dismissal. Since the commencement of this appeal, in the probate action, the court approved the final report and accounting of the Estate. Because the claims in the TEDRA petition are precluded under the doctrines of claim and issue preclusion, we affirm.

## FACTS

Steven[1] is the son of decedent, Gudrun Agusta Gary, and is one of the beneficiaries of her Estate. Other beneficiaries of the Estate include Tyler Gianesini, the decedent's grandson, and Tory Rose Gianesini, the decedent's granddaughter. On December 20, 2016, following Gary's death, her will was admitted to probate and

---

[1] As several of the parties are related and share a last name, we use first names for clarity.

Steven was appointed the personal representative (PR) of the Estate. The Estate includes three pieces of real property: a home located on Thorndyke Avenue in Seattle, Washington ("Thorndyke Property"); a home located on 23rd Avenue in Seattle ("23rd Ave. Property"); and a mostly undeveloped property in Olympia ("Olympia Property").

In June 2019, Tyler petitioned for Steven's removal as PR,[2] and the court in the probate action (probate court) granted the request in an oral ruling. On August 14, 2020, the probate court issued a written order confirming the removal of Steven as PR of the Estate and appointing Brian Ives, an attorney, as successor PR. In its order removing Steven as PR, the probate court found, among other things, that he had

> (i) failed to expedite the settlement of the Estate; (ii) claimed excessive fees and costs; (iii) personally benefited from his use of real estate held in the Estate; (iv) failed to manage Estate assets as a prudent investor; and (v) otherwise failed to properly and expeditiously discharge his fiduciary duties.

When the probate court appointed Ives, it also ordered him to investigate six issues relating to Steven's actions as the prior PR:[3]

> The [PR] shall be responsible for investigating, in consultation with one or more experts, if appropriate, the following issues:
>
> (i) whether Steven shall be compensated for his services as [PR], pursuant to RCW 11.48.210, and if so, how much;
>
> (ii) the total reimbursable advances Steven has made to the Estate;
>
> (iii) the amount of any damages Steven is liable to the Estate for under RCW 11.98.085, with regards to his management of the 23rd Avenue Property, the Olympia Property, and the Thorndyke Property;

---

[2] Tyler utilized the procedural requirements under RCW 11.68.070, which at the time required issuing a citation and scheduling a show cause hearing. See former RCW 11.68.070 (2010).

[3] The court had authority to remove Steven as PR and order the new PR to investigate his actions. See RCW 11.68.070 (court has authority to "order such remedy in law or in equity as it deems appropriate").

(iv) whether any tax returns must be filed or amended on behalf of the Estate;

(v) whether the Estate has any other claims or causes of action against Steven, either individually or as [PR] of the Estate or other beneficiaries and

(vi) the net amount owing to the Estate from Steven (or to Steven from the Estate) of unpaid rent, loss of rental income, and other damages owed to the Estate, less compensation owed to Steven, if any, and less reimbursable advances owed to Steven.

Steven did not appeal or seek discretionary review of his removal or these findings.

On August 3, 2023, Ives filed his Final Report, Petition to Distribute Estate Assets and to Close Estate, which also included addressing the issues the court had ordered him to investigate concerning Steven's activities as PR. Ives noted a hearing to close the Estate, but the probate court continued the hearing several times at Steven's request.

On November 3, 2023, Steven filed a TEDRA petition, which is the basis of this appeal, under a separate case number. Steven's petition requested that the court (TEDRA court) grant him the following relief:

[A]n order confirming Steven did not breach his fiduciary duties as executor of the Estate and is not liable to the Estate or any other beneficiaries for any damages.

[A]n order determining the fair market value of the Estate's real properties, as of the date of death, and the fair market rental value of the Estate's real properties during the pendency of the probate.

[F]ull adjudication of all issues and disputes concerning the Estate, including but not limited to the "Issues for Investigation" raised by the [PR] and Tyler's allegations that Steven breached his fiduciary duties.

[R]esolution of the tax issues discussed by Tyler in his Response and Petition, wherein he asks the Court to reject the [PR]'s Conclusions, and a final order confirming Steven's actions in relation to the Estate's taxes.

> [A]n order granting the Petition and generally approving of the Petitioner's involvement and acts in connection with trust management, administration, investment decisions and other actions to date.
>
> Approval of compensation for Steven's administrator fees and advances.
> . . . .
>
> Consolidation with the probate matter [and]
>
> [A]n order granting discovery powers . . . consistent with the local civil rules.

In January 2024,[4] a superior court commissioner certified Steven's TEDRA petition for trial and, in a subsequent court order, set trial for April.

Ives moved to revise the decision to certify the TEDRA petition for trial without holding a hearing, arguing that the petition presented issues that had previously been adjudicated in the probate proceeding. On February 23, the TEDRA court granted the motion, stating that "[w]hile the commissioner's decision to *not* hold an initial hearing on the merits was not error," nevertheless, it was revising the decision and ordering the parties to appear for a hearing on the merits on March 1, rather than a trial.

After the merits hearing, having considered the parties' briefing and oral argument, on March 15, the TEDRA court found the TEDRA action was "excessive and unnecessary" and that the issues raised were "nearly identical to those being addressed in the underlying probate matter." Further, the TEDRA court found Steven's offer of proof was insufficient to show a need for discovery. Accordingly, it dismissed the TEDRA petition and held the matter should be resolved by a hearing in the probate matter.[5] On March 25, Steven filed a notice of appeal of the March 15 dismissal order.

---

[4] All of the dates hereafter are from 2024.
[5] The order stated in the alternative to resolving the TEDRA issues in the probate hearing, the parties could agree to an order to present to the court, but they did not do so.

4

Meanwhile, in the probate action, Ives filed an Amended Final Report, Petition to Distribute Estate Assets and to Close Estate, which was set for hearing on April 26. Before the April 26 hearing, Steven filed a motion to stay the probate proceedings pending his appeal of the order dismissing his TEDRA petition, but the probate court denied the motion on April 12. A commissioner of this court denied a subsequent emergency stay request on April 24 as well. The hearing proceeded as scheduled on April 26, and the probate court heard the parties' oral argument.

The probate court entered its order approving the Amended Final Report on May 17. It made several findings, including the following:

> 2. Steven Gianesini's actions taken, and time spent as [PR] were not effective and did not move the administration of the estate forward, and a lot of that work had to be redone. . . . Therefore, pursuant to RCW 11.48.210 Steven Gianesini shall receive no compensation for his services as [PR].
>
> 3. Steven Gianesini advanced $181,457.06 of personal funds to the estate, but had he administered the estate effectively, he probably would not have had to put in that much money.
> . . . .
>
> 5. It is crystal clear that Steven Gianesini did not properly and efficiently and effectively administer the Estate.
>
> 6. Steven Gianesini caused damages to the estate by failing to rent or sell the Thorndyke and 23rd Ave. Properties for years and that failure was a breach of his fiduciary duty. . . . Therefore, Steven Gianesini shall compensate the Estate for such damages calculated as set forth in the Final Report.
>
> 7. Steven Gianesini should not be charged with rent relating to the Olympia property.
>
> 8. While it was not appropriate for Steven Gianesini to distribute the 23rd Ave. Property to himself quickly before he was removed as [PR] without a corresponding equal distribution to the other estate beneficiaries, such distribution was not in and of itself, a breach of his fiduciary duty.

9. The WA estate tax return and 1041 returns do not need to be amended as they were supported by appraisals and market analysis provided by third parties and accepted by the DOR and IRS respectively.

. . . .

11. The Final Report and accounting are accepted as an appropriate and reasonable way to resolve the Estate.

The probate court also ordered Steven to pay the Estate $151,591.75 for damage to the Thorndyke and 23rd Ave. properties. It additionally noted that

The administration of the Estate is complete, but the Estate is involved in an appeal before the Court of Appeals, Division One, case no. 86509-9. The Estate shall remain open for the sole purpose of participation in the appeal and participating in any proceeding concerning this Order. Except as otherwise set forth herein, there shall be no distribution from the Estate to the beneficiaries at this time. Final distribution shall only occur subject to the outcome of the appeal and the finality of this Order if this Order is not otherwise appealed.

Tyler filed a motion to revise the order, but the probate court denied the request. The probate court then issued a separate order and judgment awarding $134,960.90 for attorney fees and costs to Tyler, to be paid by Steven.

Steven did not appeal any orders in the probate action. Rather, in this appeal, Steven challenges only the trial court's dismissal of the TEDRA action.

## DISCUSSION

Steven argues the TEDRA court erred when it dismissed his TEDRA petition without granting him discovery powers because the complexity of the case necessitated "a thorough examination of the facts and circumstances related to the administration of the Estate." Tyler and the Estate argue the appeal is moot or that it should be dismissed under the doctrines of res judicata or collateral estoppel.

I. Issue and Claim Preclusion

Issue preclusion and claim preclusion[6] "are equitable doctrines that preclude relitigation of already determined causes." Weaver v. City of Everett, 194 Wn.2d 464, 472-73, 450 P.3d 177 (2019). The two doctrines share the goal of judicial finality and promoting judicial economy. Id. at 473. Claim preclusion refers to restrictions on relitigating the same claim or cause of action. 14A DOUGLAS J. ENDE, WASHINGTON PRACTICE: CIVIL PROCEDURE, § 35:20, at 552 (3d ed. 2018). Claim preclusion "bars litigation of *claims* that were brought or might have been brought in a prior proceeding." Weaver, 194 Wn.2d at 473 (alteration in original). Issue preclusion prevents relitigation of *issues* in a subsequent claim or cause of action. Lemond v. Dep't of Licensing, 143 Wn. App. 797, 804, 180 P.3d 829 (2008). Whether claim preclusion or issue preclusion apply are questions of law reviewed de novo. Weaver, 194 Wn.2d at 473.

Under the doctrine of claim preclusion, "no party may relitigate 'claims and issues that were litigated, or might have been litigated, in a prior action.' " Martin v. Wilbert, 162 Wn. App. 90, 94, 253 P.3d 108 (2011) (quoting Pederson v. Potter, 103 Wn. App. 62, 69, 11 P.3d 833 (2000)). The "threshold requirement of [claim preclusion] is a final judgment on the merits in the prior suit." Hisle v. Todd Pac. Shipyards Corp., 151 Wn.2d 853, 865, 93 P.3d 108 (2004). The doctrine applies " 'where a prior final judgment is identical to the challenged action in (1) subject matter, (2) cause of action, (3) persons and parties, and (4) the quality of the persons for or against whom the claim is made.' " Martin, 162 Wn. App. at 95 (quoting Loveridge v. Fred Meyer, Inc., 125 Wn.2d 759, 763,

---

[6] "[R]es judicata is generally referred to as claim preclusion, and collateral estoppel as issue preclusion." Lemond v. Dep't of Licensing, 143 Wn. App. 797, 804, 180 P.3d 829 (2008).

887 P.2d 898 (1995)). The party asserting the defense bears the burden of proof. Hisle, 151 Wn.2d at 865.

For issue preclusion, the party asserting the defense must establish four elements:

> (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding; (2) the earlier proceeding ended in a judgment on the merits; (3) the party against whom [issue preclusion] is asserted was a party to, or in privity with a party to, the earlier proceeding; and (4) application of [issue preclusion] does not work an injustice on the party against whom it is applied.

Weaver, 194 Wn.2d at 474 (quoting Christensen v. Grant County Hosp. Dist. No. 1, 152 Wn.2d 299, 307, 96 P.3d 957 (2004)). Additionally, "the party against whom the doctrine is asserted must have had a full and fair opportunity to litigate its case in a prior proceeding." Id. at 473-74.

Thus, claim preclusion and issue preclusion share the requirement of a judgment on the merits in the prior action or proceeding. See Hisle, 151 Wn.2d at 856 (claim preclusion); Weaver, 194 Wn.2d at 474 (issue preclusion). In this case, at the time of the challenged order dismissing the TEDRA action, the court had not yet issued a final decision in the probate action. Accordingly, because the element of a judgment on the merits was not satisfied, the TEDRA court erred by prematurely determining Steven's claims were precluded under the doctrines of claim preclusion and issue preclusion.

However, subsequently, on May 17, 2024, the probate court entered an order approving the PR's Amended Final Report. In the order, the probate court acknowledged the present appeal of the dismissal of the TEDRA action and stated,

> The Estate shall remain open for the sole purpose of participation in the appeal and participating in any proceeding concerning this Order. . . .

8

Final distribution shall only occur subject to the outcome of the appeal and the finality of this Order if this Order is not otherwise appealed.

Steven did not attempt to appeal or seek discretionary review of the probate court order approving the PR's Amended Final Report. And significantly, in this appeal, although Steven argues the elements for either estoppel or res judicata are not met, he concedes, "Any related probate and TEDRA matters will inevitably meet the first three requirements addressing the same subject matter, a judgment on the merits, and common parties." Further, he states, "Appellant does not argue that the probate of the Estate and TEDRA proceedings for the Estate would lack those fundamental commonalities."[7] Thus, while the TEDRA court's dismissal was premature because there was no final judgment on the merits at the time, this error was harmless given Steven's concession as to that element and the court's subsequent order approving the PR's Amended Final Report.

However, Steven argues that "the fourth requirement for estoppel and res judicata"—that "the application of either principle would not work an injustice against the

_____

[7] Neither party suggests that the requirement of finality in the probate case is not satisfied, although the probate court did not enter final judgment, in recognition of the present appeal. We note that "this court [has] aligned itself with the majority of courts which employ a pragmatic approach to determine finality for purposes of collateral estoppel." Cunningham v. State, 61 Wn. App. 562, 566-67, 811 P.2d 225 (1991). The Cunningham court quoted "the leading case advocating the pragmatic approach," in which Judge Friendly wrote:

Whether a judgment, not "final" in the sense of 28 U.S.C. § 1291 [for purposes of appeal], ought nevertheless be considered "final" in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review. "Finality" in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.

Lummus Co. v. Commonwealth Oil Refining Co., 297 F.2d 80, 89 (2d Cir.1961), cert. denied, 368 U.S. 986 (1962), quoted in Cunningham, 61 Wn. App. at 567. Further, the court noted that the Restatement (Second) of Judgments (1982) "embraces the Lummus court's pragmatic approach," stating that for purposes of issue preclusion, "a final judgment 'includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.' " Cunningham, 61 Wn. App. at 567 (quoting RESTATEMENT, supra at § 13, comment g).

party [to] whom they are applied," Christensen, 152 Wn.2d at 306-07—is not met.[8]

Steven's claim of procedural unfairness fails. His claims are based on the difference

between TEDRA proceedings and probate proceedings, which he describes as

"informal, streamlined, without the same evidentiary considerations" and particularly,

lacking discovery. He argues that because he was unable to conduct discovery, as he

would have under TEDRA, he lacked a full and fair opportunity to defend himself.

But in several cases, we have held that collateral claims relating to wills,

including TEDRA petitions, are foreclosed by prior probate proceedings. For example, in

Martin, we explained,

> The nature of a probate proceeding makes the final order closing the
> estate binding as to all parties claiming an interest in the estate. "[O]rders
> and decrees of distribution made by superior courts in probate
> proceedings upon due notice provided by statute are final adjudications
> having the effect of judgments in rem and are conclusive and binding upon
> all persons having any interest in the estate and upon all the world as
> well."

162 Wn. App. at 97 (quoting Ryan v. Plath, 18 Wn.2d 839, 857, 140 P.2d 968 (1943)).

See also Gourde v. Gannam, 3 Wn. App. 2d 520, 525-26, 417 P.3d 650 (2018) (holding

claim preclusion prevented a later request for will interpretation after the estate was

closed); Garza v. Baley, No. 86854-3-I, slip op. at 9 (Wash. Ct. App. Nov. 19, 2024)

(unpublished), https://www.courts.wa.gov/opinions/pdf/868543.pdf (holding claim

preclusion barred subsequent TEDRA petition since it asserted claims that either were,

should, or might have been litigated in the probate of the estate).[9] Thus, even if TEDRA

---

[8] This argument conflates the separate doctrines of claim and issue preclusion, as only issue preclusion specifically requires "the party against whom the doctrine is asserted must have had a full and fair opportunity to litigate its case in a prior proceeding." Weaver, 194 Wn.2d at 473-74.

[9] While unpublished opinions do not have precedential value, GR 14.1, we may cite to them as necessary for a reasoned opinion and do so here as an example of the same analysis in Martin, 162 Wn. App. 90.

claims are subject to different procedures, including discovery, such claims may still be foreclosed by probate proceedings under the doctrines of claim and issue preclusion, and the difference in procedures does not necessarily work a procedural injustice. Here, because the probate proceeding was binding upon parties claiming an interest to the estate and "all the world," the parties to this case are bound by it. Similarly, the fourth element of claim preclusion is satisfied, as the parties in this collateral action are bound by the order in the probate action. See Martin, 162 Wn. App. at 97 ("For the persons for or against whom the claim is made to be of the same quality, the parties in the collateral action must be bound by the judgment in the prior proceeding.").

Although Steven concedes the other elements of both claim preclusion and issue preclusion, for completeness, we address them briefly. As to the first element of claim preclusion, both cases covered the same subject matter, as they concern the distribution of the Estate and the review of Steven's performance as PR. Additionally, both doctrines require same or similar persons or parties to the action. Here, the parties are the same in both the TEDRA and the probate actions including Steven, Tyler, Tory,[10] and the PR.

The remaining element for claim preclusion is whether the two cases involve the same cause of action. In assessing this factor, we consider:

> (1) whether the rights or interests established in the prior judgment would be destroyed or impaired by the prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the suits involved infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

---

[10] Tory received notification of the initial TEDRA petition and represented herself at the hearing on the merits at trial. However, she is not identified in the caption of this appeal and did not submit briefing.

Ensley v. Pitcher, 152 Wn. App. 891, 903, 222 P.3d 99 (2009). While these factors "are analytical tools; it is not necessary that all four factors be present to bar the claim." Id. Similarly, as to the first element for issue preclusion—the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding—many of the issues from the probate proceeding are identical to the issues presented in the TEDRA petition.[11]

In his TEDRA petition, Steven sought an order that confirmed he "did not breach his fiduciary duties . . . and is not liable to the Estate or any other beneficiaries for any damages."[12] However, the TEDRA court's Order approving the Final Report concluded that Steven breached his fiduciary duties when he failed to rent or sell the estate properties "for years." It also recognized that Steven needed to compensate the Estate for such damages as calculated in the Final Report and resolved the remaining investigatory mandates.

Similarly, Steven sought the fair market valuations of the properties at the date of Gary's death and during the pendency of the probate. However, according to the Washington Estate and Transfer Tax Return Steven filed in 2018, he obtained valuations of all the estate properties at the time. The parties then obtained a second appraisal of the 23rd Ave. Property in 2022. The Final Report also included valuations on the Thorndyke Property from 2020 and 23rd Ave. Property from 2019.

---

[11] Because of their similarity, we conduct the analysis under the claim preclusion doctrine and conclude the elements are satisfied under both doctrines.

[12] Other related claims requested the court approve Steven's involvement and associated acts "in connection with trust management, administration, investment decisions, and other actions to date" and for "full adjudication of all issues and disputes concerning the Estate, including but not limited to the 'Issues for Investigation' raised by the [PR]."

Steven also sought approval of compensation as PR and for the advances he provided to the Estate. But the August 2020 Order removing Steven concluded that he was "not entitled to any payment, credit, compensation, or reimbursement for his time or expenses for maintenance or repairs" on the 23rd Ave. Property. It also stated that "Steven is responsible for any costs incurred by the Estate, including any interest and penalties, for his failure to properly file or report any federal, state, or local taxes," and he "shall not be entitled to interest on funds he advanced to the Estate." Otherwise, the Final Report considered Steven's compensation as PR and his advances of funds to the Estate, offset by what he owed according to the investigatory mandates. Thus, the issues raised within the TEDRA petition are identical to many of the issues resolved within the probate proceeding. Tyler's and Tory's interests in the estate, as established by the probate of Gary's will, would be further impaired by the prosecution of this second action.

The " 'substantially the same evidence' factor requires analysis of whether the evidence necessary to support each action is identical." Ensley, 152 Wn. App. at 903. In this case, Gary's will and the findings and investigatory mandates from the August 2020 Order removing Steven were at the center of the probate proceedings. However, Steven contends discovery powers through TEDRA were necessary to examine "the circumstances regarding his removal as [PR] and all of the eventual blame and damages that would be heaped on him because of it." For example, he argues that discovery powers through TEDRA were necessary to investigate the presence of lead and asbestos from the properties and the remediation efforts needed to make certain properties ready to rent. He also sought to investigate why Ives did not sell the timber

on the Olympia Property before he sold it and how Tyler and Tory "chang[ed] their minds on how to handle the Estate." Thus, Steven's claims in the TEDRA proceeding rely on substantially similar evidence to that relevant to the probate proceeding, i.e., the circumstances regarding his removal as PR and the conditions of the properties. Moreover, Steven does not explain why he could not raise these issues in the probate proceeding or did not appeal the August 2020 Order removing him. Rather, there was a plethora of motions within the probate action, including the motion to remove Steven as PR, the motion for the court to accept and approve the Amended Final Report, and the motion to enter judgment awarding Tyler his attorney fees and costs to be paid by Steven. Steven submitted a response to each of these motions through counsel. When Tyler sought revision on the issue of damage amounts, Steven requested the court not depart from the commissioner's order.

As to the last two considerations for claim preclusion, both cases involve infringement of the same rights and rely—at least to some degree—on the same "transactional nucleus of facts." Ensley, 152 Wn. App at 903. Considering the Ensley factors, we conclude that the two cases involve the same cause of action.

Because Steven's TEDRA petition asserts claims that either were, should, or "might" have been litigated in the probate of Gary's Estate, the TEDRA action is barred by claim preclusion. We also conclude that the TEDRA claims are foreclosed under the doctrine of issue preclusion. While the TEDRA court prematurely dismissed Steven's petition before entry of its order approving the PR's Amended Final Report, this error was harmless, as now, there is a final judgment on the merits, which Steven concedes.

14

Therefore, we affirm the TEDRA court's dismissal of Steven's TEDRA petition based on claim and issue preclusion.[13]

## II. Attorney Fee Requests

Respondents each request an award of attorney fees on appeal under RCW 11.96A.150. Tyler argues he should be awarded attorney fees as the prevailing party. Foster v. Gilliam, 165 Wn. App. 33, 58, 268 P.3d 945 (2011) (awarding attorney fees under its discretion because the party prevailed). Ives argues the Estate should receive fees because the litigation did not benefit the Estate.

RAP 18.1 permits us to award reasonable attorney fees or expenses "[i]f applicable law grants to a party the right to recover" such attorney fees or expenses. Under RCW 11.96A.150(1), a court has discretion to "order costs, including reasonable attorneys' fees, to be awarded to any party." The court may order costs in a manner it determines to be equitable, and it "may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved." RCW 11.96A.150(1).

Here, the only order on appeal was the order dismissing the TEDRA petition. We conclude the appeal has not benefited the Estate and that Respondents have prevailed. Accordingly, we award attorney fees on appeal to Tyler and the Estate, subject to their compliance with RAP 18.1.

---

[13] Based on our disposition, we do not address the parties' arguments about mootness.

## CONCLUSION

We affirm the dismissal of Steven's TEDRA petition and grant the Estate's and Tyler's requests for attorney fees on appeal.

_Cheung, J._

WE CONCUR: [14]

---

[14] Judge Lee is serving in Division One of this court pursuant to RCW 2.06.040.